## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| **STEEL CITY POPS** | ) | |
| **HOLDING, LLC,** *et al.*[1] | ) | **Case No: 19-04687-DSC11** |
| | ) | |
| **Debtors.** | ) | **(Jointly Administered)** |

## SECOND FINAL DIP ORDER GRANTING THE DEBTORS' SECOND MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING THE DEBTORS TO (I) USE CASH COLLATERAL AND (II) OBTAIN POST-PETITION FINANCING

This matter came before the Court on December 11, 2019 (the "**Second Interim Hearing**") and January 2, 2020 (the "**Second Final Hearing**"), for a hearing on Debtors and Debtors-in-possession Steel City Pops Holding, LLC's ("**SCP Holding**"; and jointly with all other jointly administered Debtors (the "**Related Debtors**"), the "**Debtors**") Second Motion for Interim and Final Orders Authorizing the Debtors to (I) Use Cash Collateral, (II) Obtaining Post-Petition Financing and (III) Scheduling Final Hearing Motion (the "**Second DIP Motion**")[2] [Doc. No. 52] pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and 507 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the Local Rules of the United States Bankruptcy Court for the Northern District of Alabama (the "**Local Rules**"). In the Second DIP Motion, the Debtors sought authorization from the Court to approve:

---

[1] The Debtors in these chapter 11 cases include: Steel City Holding, LLC., Case No. 19-04687-DSC11; Steel City Pops B'ham, LLC ("**SCP Bham**"), Case No. 19-04689-DSC11; Steel City Pops DTX, LLC ("**SCP DTX**") Case No. 19-04692-DSC11; Steel City Pops FWTX, LLC ("**SCP FWTX**"), Case No. 19-04695-DSC11; and Steel City Pops, LKY, LLC ("**SCP LKY**"), Case No. 04697-DSC11.

[2] Unless otherwise defined herein, all defined terms shall have the meaning ascribed to such terms in the Second DIP Motion and the Prepetition Loan Documents (as defined herein) as applicable.

i) an initial advance of no more than $300,000.00 upon entry of this Order (the "**Second Final DIP Order**") by the Debtors' pre-Petition Date lenders, Redmont Private Debt Fund III, L.P. ("**Redmont**"), NobleBank & Trust ("**NobleBank**") and ServisFirst Bank ("**ServisFirst**"; and collectively with Redmont and NobleBank, the "**Lenders**"), with Redmont and ServisFirst funding $112,500.00 each and NobleBank funding $75,000.00 (collectively, the "**Second Interim DIP Loan**"); and, ii) upon entry of a final order by the Court approving the Second DIP Motion, an additional advance of no more than $500,000.00, with Redmont and ServisFirst funding $187,500 each and NobleBank funding $125,000.00 (collectively with the Second Interim DIP Loan, the "**Second DIP Loan**").  Upon the record of the Second Interim Hearing and Second Final Hering, including all evidence proffered, all declarations submitted in connection therewith, including but not limited to the Declaration of Jim Watkins, Manager of the Debtors in Support of Chapter 11 Petitions and First Day Pleadings (the "**Watkins Declaration**") [Doc. No. 26] and all of the proceedings had before this Court; and the Court having reviewed the Second DIP Motion and no objections thereto being filed and having found and determined that the legal and factual bases set forth in the Second DIP Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefore,

      **IT IS HEREBY FOUND AND DETERMINED THAT:**

    1.     **<u>Disposition as to the Second DIP Loan</u>**.  The Second DIP Motion is GRANTED as to the amount of the Second DIP Loan on a FINAL basis in accordance with the terms of this Second Final DIP Order.  No objections to the Second DIP Motion have been filed or otherwise submitted to the Court.

    2.     **<u>Jurisdiction</u>**.  This Court has core jurisdiction over these jointly administered bankruptcy cases (the "**Bankruptcy Case**s") commenced on November 14, 2019 (the "**Petition**

2

Date"), the Second DIP Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334 and the General Order of Reference from the United States District Court for the Northern District of Alabama, dated July 16, 1984, as amended July 17, 1984. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. **Notice**. Under the circumstances, the notice given by the Debtors of the Second DIP Motion, the relief requested therein, and the Second Interim Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 4001 and the Local Rules.

4. **Debtors' Stipulations**. Without prejudice to the rights of any other party, but subject to the limitations thereon contained in paragraphs 26 and 27 of this Second Final DIP Order, prior to the Petition Date, the Lenders each had one or more loans outstanding to SCP Holding, one or more of the Related Debtors and one or more of the entities related to SCP Holding that has not filed for protection under the Bankruptcy Code (the "**Non-Debtors Related Entities**") secured by various collateral granted by SCP Holding and one or more of the Related Debtors and the Non-Debtors Related Entities. The Debtors represent, admit, stipulate, and agree as follows:

*The Redmont Loan*

i. On December 7, 2018, Redmont, made a loan in the principal amount of $1,250,000.00 (the "**Prepetition Redmont Loan**") to: (i) SCP Bham; (ii) SCP DTX; (iii) SCP FWTX; (iv) SCP LKY; (v) Steel City Pops, ATL, LLC, a Georgia limited liability company ("**SCP ATL**"); (vi) Steel City Pops, SATX, LLC, a Texas limited liability company ("**SCP SATX**"); (vii) Steel City Pops, HTX, LLC, a Texas limited liability company ("**SCP HTX**"); and (viii) Steel City Pops, ATX, LLC, a Texas limited liability company ("**SCP ATX**") (collectively, the "**Prepetition Redmont Borrowers**").

ii. The Prepetition Redmont Loan is evidenced by, among other documents, that

3

certain Secured Promissory Note dated December 7, 2018, executed by the Prepetition Redmont Borrowers in favor of Redmont in the principal amount of $1,250,000.00 (the "**Prepetition Redmont Note**").

iii.        SCP Holding guaranteed the obligations of the Prepetition Redmont Borrowers under the Prepetition Redmont Loan, as evidenced by a certain Continuing Guaranty dated December 7, 2018, executed by SCP Holding in favor of Redmont.

iv.       As security for the Prepetition Redmont Loan, the Prepetition Redmont Borrowers and SCP Holding executed in favor of Redmont a certain Security Agreement dated December 7, 2018, whereby the Prepetition Redmont Borrowers and SCP Holding pledged the following collateral to Redmont (collectively, the "**Prepetition Redmont Collateral**"):

> all personal and fixture property of every kind and nature including without limitation all goods (including inventory and equipment), instruments (including promissory notes), documents, accounts and account receivables (including health-care-insurance receivables), chattel paper (whether tangible or electronic), deposit accounts, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), commercial tort claims, securities and all other investment property, supporting obligations, any other contracts, contract rights or rights to the payment of money, insurance claims, books, records, all general intangibles (including all payment intangibles), and substitutions, accessions, additions, parts, accessories, attachments, replacements, proceeds and products of, for and to any and all of the foregoing.

v.       Redmont perfected its security interest and lien upon the Prepetition Redmont Collateral by filing UCC financing statements in the appropriate jurisdictions.

vi.      In connection with the Prepetition Redmont Loan, a certain Intercreditor Agreement dated December 7, 2018 was executed by and among the Lenders, to clarify and agree upon their respective rights and interests (the "**Intercreditor Agreement**").

*The NobleBank Loan*

vii.     On May 26, 2017, NobleBank made a loan in the principal amount of $1,500,000.00 (the "**Prepetition NobleBank Loan**") to: (i) SCP Holding; (ii) SCP Bham; (iii)

4

SCP DTX; (iv) SCP FWTX; (v) SCP ATL; (vi) SCP SATX; (vii) SCP HTX; (viii) SCP ATX; and (ix) SCP LKY (collectively, the "**Prepetition NobleBank Borrowers**").

viii.     The Prepetition NobleBank Loan is evidenced by, among other documents, a certain Loan and Security Agreement dated May 26, 2017, by and between NobleBank and the Prepetition NobleBank Borrowers (the "**Prepetition NobleBank Loan Agreement**").

ix.     The Prepetition NobleBank Loan is further evidenced by, among other documents, a certain Promissory Note dated May 26, 2017, executed by the Prepetition NobleBank Borrowers in favor of NobleBank in the principal amount of $1,500,000.00 (the "**Prepetition NobleBank Note**").

x.     James A. Watkins ("**Watkins**") guaranteed the obligations of the Prepetition NobleBank Borrowers under the Prepetition NobleBank Loan, as evidenced by a certain Guaranty dated May 26, 2017, executed by Watkins in favor of NobleBank (the "**Watkins NobleBank Guaranty**" and, together with the Prepetition NobleBank Loan Agreement and the Prepetition NobleBank Loan Note, collectively the "**NobleBank Loan Documents**").

xi.     As security for the Prepetition NobleBank Loan, the Prepetition NobleBank Borrowers pledged the following collateral to NobleBank (collectively, the "**Prepetition NobleBank Collateral**") pursuant to the Prepetition NobleBank Loan Agreement:

> Contract rights and all of the accounts, notes, bills, acceptances, chattel paper, instruments, or other forms of obligations now existing or hereafter coming into existence in which [Prepetition NobleBank Borrowers] now have or may hereafter acquire any right; all proceeds thereof; all tax refunds due or to become due from the United States or the State of Alabama; money on deposit with any bank or savings and loan association;

> All inventory now or hereafter owned or acquired by [Prepetition NobleBank Borrowers] wherever the same shall be located, and whether or not such Inventory or any part there of shall be in existence at the date hereof or shall come into existence subsequently thereto (the term "Inventory" being deemed to include all goods, wares, equipment, parts, merchandise, supplies, and materials of every nature used or usable in connection with [Prepetition NobleBank Borrowers] business);

Case 19-04687-DSC11     Doc 87     Filed 01/06/20     Entered 01/06/20 16:09:26     Desc Main
Document     Page 5 of 44

All trademarks, service marks, goodwill, copyrights, trade secrets, licenses, patent rights, software, intangible rights, and general intangibles;

All equipment, machinery, furniture, furnishings, trade fixtures, shelving, office equipment, and office supplies;

All goods as shall from time to time be described by type, class, or item on any schedule supplementary hereto; and

All proceeds of the goods and intangibles described above; and

All of our books and records relating to those goods and intangibles described above.

xii.      NobleBank perfected its security interest in and lien upon the Prepetition NobleBank Collateral by filing UCC financing statements in the appropriate jurisdictions.

xiii.      Pursuant to the Prepetition NobleBank Loan Agreement and the Intercreditor Agreement, NobleBank has advanced additional funds to the Prepetition NobleBank Borrowers in the approximate amounts of $167,547.00 and $171,405.12 prior to the Petition Date, as more particularly described in that certain Acknowledgement of Additional Indebtedness Pursuant to Intercreditor Agreement dated February 28, 2019, between the Lenders (the "**Intercreditor Acknowledgement**").

_The ServisFirst Loans_

xiv.      On January 6, 2014, ServisFirst made a loan in the principal amount of $600,000.00 ("**ServisFirst Loan I**") to SCP Bham as evidenced by that certain SBA Note dated January 6, 2014 in the original principal amount of $600,000.00. As of the Petition Date, the total outstanding balance owed under the ServisFirst Loan I was $251,079.10, consisting of a principal balance of $241,989.62, accrued interest of $8,489.48 and late charges of $600.00.

xv.      On January 29, 2015, ServisFirst extended a revolving line of credit to SCP Bham in the maximum principal amount of $200,000.00 ("**ServisFirst Loan II**") to SCP Bham as evidenced by that certain Promissory Note made by SCP Bham in favor of ServisFirst dated

January 29, 2015 in the original principal amount of $600,000.00. As of the Petition Date, the total outstanding balance owed under the ServisFirst Loan II was $204,612.50, consisting of a principal balance of $200,000.00, accrued interest of $4,562.50 and late charges of $50.00.

xvi.     On October 13, 2015, ServisFirst made a loan in the principal amount of $1,600,000.00 ("**ServisFirst Loan III**") to: i) SCP Bham, ii) SCP LKY; iii) SCP Holding; iv) SCP DTX; v) SCP FWTX; and vi) SCP HTX (collectively, the "**Prepetition ServisFirst Borrowers**") as evidenced by that certain SBA Note in favor of ServisFirst dated October 13, 2015 in the original principal amount of $1,600,000.00. As of the Petition Date, the total outstanding balance owed under the ServisFirst Loan III was $1,169,305.82, consisting of a principal balance of $1,147,140.13, accrued interest of $21,965.69 and late charges of $200.00.

xvii.     On October 3, 2016, ServisFirst made a loan in the principal amount of $1,500,000.00 ("**ServisFirst Loan IV**") to the Prepetition ServisFirst Borrowers as evidenced by that certain Promissory Note in favor of ServisFirst dated October 3, 2016 in the original principal amount of $1,500,000.00. As of the Petition Date, the total outstanding balance owed under the ServisFirst Loan IV was $1,386,105.42, consisting of a principal balance of $1,350,700.41, accrued interest of $33,905.01 and late charges of $1,500.00.

xviii.     Additionally, pursuant to the Intercreditor Agreement and as described in the Intercreditor Acknowledgement, ServisFirst has advanced additional funds to SCP Holding, the Related Debtors and the Non-Debtors Related Entities in the approximate amounts of $366,980.00 (the "**ServisFirst Tranche 1 Loan**") and $375,447.00 (the "**ServisFirst Tranche 2 Loan**"; and collectively with ServisFirst Loans I – IV  and the ServisFirst Tranche 1 Loan, the "**Prepetition ServisFirst Indebtedness**"; and collectively with the Prepetition NobleBank Loan and Prepetition Redmont Loan, the "**Prepetition First Lien Obligations**"; and with all

documents evidencing, securing, describing or related to the Prepetition First Lien Obligations, the "**Prepetition Loan Documents**").  As of the Petition Date, the total outstanding balance owed under the ServisFirst Tranche 1 Loan was $377,315.76, consisting of a principal balance of $358,980.17, accrued interest of $17,689.41 and late charges of $646.18 and the total outstanding balance owed under the ServisFirst Tranche 2 Loan was $394,964.61, consisting of a principal balance of $375,447.00, accrued interest of $18,834.93 and late charges of $682.68.

  xix.     As security for the Prepetition ServisFirst Indebtedness, ServisFirst was granted a pre-Petition Date security interest in various collateral owned by one or more of the Debtors (the "**Prepetition ServisFirst Collateral**"; and collectively with the Prepetition NobleBank Collateral and Prepetition Redmont Collateral; the "**Prepetition Collateral**") pursuant to: that certain Loan and Security Agreement date January 6, 2014; that certain SBA Security Agreement dated January 6, 2014; that certain Loan and Security Agreement dated October 13, 2015; that certain SBA Security Agreement dated October 13, 2015; that certain Commercial Security Agreement dated January 29, 2015; that certain Loan and Security Agreement dated October 3, 2016; and that certain Loan Modification, Acknowledgement and Forbearance Agreement dated December 14, 2018; all of which were by and between ServisFirst and the Prepetition ServisFirst Borrowers, among others.  Accordingly, the Prepetition ServisFirst Borrowers pledged the following collateral to ServisFirst:

    (a)    all equipment, inventory, fixtures and other tangible property of any of the Joint Borrowers and any and all accessions and additions thereto, any substitutions and replacements therefor, and all attachments and improvements placed upon or used in connection therewith, or any part thereof;
    (b)    all accounts, contracts and general intangibles of the Joint Borrowers;
    (c)    all of Joint Borrowers' rights as an unpaid vendor or lienor, including stoppage in transit, replevin, detinue and reclamation;

(d)     all moneys of any of the Joint Borrowers, all deposit accounts of Joint Borrowers in which such moneys may at any time be on deposit or held, all investments or securities of any of the Joint Borrowers in which such moneys may at any time be invested and all certificates, instruments and documents of any of the Joint Borrowers from time to time representing or evidencing any such moneys;

(e)     all investment property of any of the Joint Borrowers;

(f)     any other property of any of the Joint Borrowers now or hereafter held by ServisFirst or by others for ServisFirst's account;

(g)     all rights, interest, dividends, proceeds, products, rents, royalties, issues and profits of any of the property described in the foregoing granting clauses, whether the product of sale, lease, license, exchange or other disposition of the Personal Property, paid or accruing before or after the filing of any petition by or against any of the Joint Borrowers under the federal Bankruptcy Code, and all instruments delivered to ServisFirst in substitution for or in addition to any such property; and

(h)     all supporting obligations; and

(i)     all books, documents, files, ledgers and records (whether on computer or otherwise) covering or otherwise related to any of the property described in the foregoing granting clauses.

xx.     ServisFirst perfected its security interest in and lien upon the Prepetition ServisFirst Collateral by filing UCC financing statements in the appropriate jurisdictions.

xxi.     Additionally, repayment of the ServisFirst Indebtedness was absolutely and unconditionally guaranteed by: i) SCP ATL and SCP SATX pursuant to those certain Guaranty Agreements dated December 14, 2018; ii) SCP ATX pursuant to that certain Guaranty Agreement dated February 28, 2018; and iii) Watkins pursuant to those certain Guaranty Agreements dated January 6, 2014, January 29, 2015, October 13, 2015, October 3, 2016, December 14, 2018 and February 28, 2018.

*Stipulations Regarding the Prepetition First Lien Obligations.*

xxii.     Prepetition First Lien Obligations.  As of the Petition Date, the Debtors, without defense, counterclaim, or offset of any kind were jointly and severally indebted and liable to the Lenders under the Prepetition Loan Documents (the "**Prepetition Obligations**").  The Prepetition Obligations constitute legal, valid, binding and non-avoidable obligations against the Debtors and are not subject to any avoidance, recharacterization, effect, counterclaim,

9

defense, offset, subordination, other claim, cause of action or other challenge of any kind under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise. No payments or transfers made to or for the benefit of (or obligations incurred to or for the benefit of) the Lenders by or on behalf of any of the Debtors prior to the Petition Date under or in connection with any of the Prepetition Loan Documents is subject to avoidance, recharacterization, effect, counterclaim, defense, offset, subordination, other claim, cause of action or other challenge of any kind or nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise.

xxiii.    <u>Prepetition Liens</u>. Pursuant to the Prepetition Loan Documents, the Prepetition Obligations are secured by valid, binding, perfected and enforceable first priority liens on and security interests in the Prepetition Collateral (the "**Prepetition Liens**"). The Prepetition Liens (i) are valid, binding, perfected, and enforceable first priority liens and security interests in the Prepetition Collateral, (ii) are not subject, pursuant to the Bankruptcy Code or other applicable law, to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind, (iii) as of the Petition Date, are subject and/or subordinate only to the Permitted Liens (if any) as permitted by the terms of the Prepetition Loan Documents, and (iv) constitute the legal, valid, and binding obligation of the Debtors, enforceable in accordance with the terms of the applicable Prepetition Loan Documents. Nothing in this Second Final DIP Order is intended or shall be construed to modify or re-prioritize the Lenders' relative lien positions or priority per the Prepetition Liens.

xxiv.    <u>Cash Collateral</u>. Any and all of the Debtors' cash, including cash and other amounts on deposit or maintained in any account or accounts by the Debtors, and any amounts

10

generated by the collection of accounts receivable or other disposition of the Prepetition Collateral (as defined below) existing as of the Petition Date, and the proceeds of any of the foregoing is the Lenders' cash collateral within the meaning of Bankruptcy Code section 363(a) (the "**Cash Collateral**").

5.      **<u>Findings Regarding the Second DIP Loan and Use of Cash Collateral</u>**.

(a)      Good cause has been shown for the entry of this Second Final DIP Order.

(b)      The Debtors have an ongoing and immediate need to continue obtaining credit pursuant to the Second DIP Loan and to use the Cash Collateral, in order to, among other things, (i) permit the orderly continuation of their businesses; (ii) maintain relationships with their vendors, suppliers, customers, and other parties; (iii) make payroll; (iv) make capital expenditures; (v) make adequate protection payments; and (vi) pay the costs of administration of the Bankruptcy Case and satisfy other working capital and general corporate purposes of the Debtors. The Debtors require access to sufficient working capital and liquidity through the incurrence of the new indebtedness for borrowed money and other financial accommodations to preserve and maintain the going concern values of the Debtors. The Debtors will not have sufficient sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business throughout the Bankruptcy Case without the Second DIP Loan and authorized use of Cash Collateral.

(c)      The Debtors are unable to obtain financing on more favorable terms from sources other than the Lenders under the Second DIP Motion and are unable to obtain adequate unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense. The Debtors are also unable to obtain secured credit allowable under Bankruptcy Code sections 364(c)(1), 364(c)(2), and 364(c)(3) for the purposes set forth in the Second DIP Motion without

the Permitted Liens (if any), the DIP Liens (as defined below) and the DIP Superpriority Claim (as defined below) under the terms and conditions set forth in this Second Final DIP Order and the Second DIP Motion.

(d)     The terms of the Second DIP Loan, the Second DIP Motion and the use of Cash Collateral are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e)     The Second DIP Loan has been negotiated in good faith and at arm's length among the Debtors, the Lenders, and all of the Debtors' obligations and indebtedness arising under, in respect of, or in connection with the Second DIP Loan and the Second DIP Motion including, without limitation, all loans made to the Debtors pursuant to the Second DIP Motion and all other obligations under the Second DIP Motion (collectively, the "**DIP Obligations**") shall be deemed to have been extended by the Lenders in good faith as that term is used in Bankruptcy Code section 364(e) and in express reliance upon the protections offered by Bankruptcy Code section 364(e). The DIP Obligations, the DIP Liens and the DIP Superpriority Claim shall be entitled to the full protection of Bankruptcy Code section 364(e) in the event that this Second Final DIP Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise, and any liens or claims granted to the Lenders hereunder arising prior to the effective date of any such vacatur, reversal or modification of this Second Final DIP Order shall be governed in all respects by the original provisions of this Second Final DIP Order, including entitlement to all rights, remedies, privileges and benefits granted herein.

(f)     The Debtors have requested entry of this Second Final DIP Order pursuant to Bankruptcy Rule 4001and the Local Rules.  Absent granting the relief sought by this Second

Final DIP Order, the Debtors' estates will be immediately and irreparably harmed. Consummation of the Second DIP Loan and authorization of the use of the Prepetition Collateral (including the Cash Collateral) in accordance with this Second Final DIP Order and the Second DIP Motion are, therefore, in the best interests of the Debtors' estates and are consistent with the Debtors' fiduciary duties.

6. **Authorization of the Second DIP Loan and the Second DIP Motion**.

(a) The Debtors are hereby expressly authorized and empowered to execute and deliver and, on such execution and delivery, directed to perform under the Second DIP Motion. Specifically, the terms of which are set forth below and more fully described herein:

i. The Second DIP Loan shall be made to all Debtors as co-obligors.

ii. The Second DIP Loan shall be in the total amount of $800,000.00 provided solely by all three Lenders with: i) ServisFirst funding a total of $300,000.00; ii) Redmont funding a total of $300,000.00; and iii) NobleBank funding a total of $200,000.00.

iii. The Second DIP Loan shall accrue interest at the rate of five percent (5%) per annum with interest-only payments due on the first (1st) day of each month beginning on January 1, 2020.

iv. The Second DIP Loan shall mature at the earlier of (the "**Maturity Date**"): i) February 11, 2020; (ii) the effective date of a plan of reorganization confirmed by the Court, (iii) the consummation of a sale(s) of all or substantially all of any Debtor's assets; (iv) conversion of any of the Bankruptcy Cases to chapter 7; or (v) the entry of an order by the Court approving an alternative DIP Loan; and (vi) such later date as the Lenders in their sole discretion may agree to in writing with the Debtors.

v. The Second DIP Loan shall be earmarked for use to satisfy the Budget, as provided in connection with the Second DIP Motion and shall not be used for purposes not set forth in the Budget without prior written consent from all Lenders subject to any variances allowed by Lenders.

vi. The Debtors shall default under the Second DIP Loan if any one or more of the following shall occur (each, an "**Event of Default**"):

a. The Debtors' failure to perform or comply with any term, condition, covenant or obligation (including a payment obligation) contained in any credit agreement or similar document evidencing or describing the Second DIP Loan;

b. The cessation of the Second DIP Loan to be in full force and effect or the Second DIP Loan being declared by the Court to be null and void or the validity or enforceability of the Second DIP Loan being

13

contested by any of the Debtors or any of the Debtors denying in writing that it has any further liability or obligation under the Second DIP Loan or the Lenders ceasing to have the benefit of the liens granted by this Second Final DIP Order or final order on the Second DIP Motion.

c.  Except as permitted in this Second Final DIP Order or any subsequent order of the Court related to the Second DIP Motion, the entry of an order of the Court granting to any third party a claim or lien *pari passu* with or senior to that granted to the Lenders described herein.

d.  Until the DIP Obligations are repaid in full, the Debtor shall not make any payment of principal or interest or otherwise on account of any indebtedness or payables other than the Second DIP Loan or Prepetition Obligations other than in accordance with the Budget approved by the Lenders.

e.  If, as of any reporting date, the Debtors' cumulative sales, cash disbursements and/or receipts from the period from the Petition Date through the last date covered by the report exceeds any permitted variances for that period allowed by the Lenders.

f.  The Debtors fail to make any interest payments due under the Interim DIP Order or final order on the Second DIP Motion within three (3) business days of when due.

g.  The entry of an order converting any of the Bankruptcy Cases to a case under chapter 7 of the Bankruptcy Code, or the Debtors filing a motion or not opposing a motion seeking such relief.

h.  The entry of an order dismissing any of the Bankruptcy Cases, or the Debtors filing a motion or not opposing a motion seeking such relief, unless consented to by the Lenders.

i.  The entry of an order in any of the Bankruptcy Cases or any successor case, which order constitutes the stay, modification, appeal or reversal of the Interim DIP Order or final order on the Second DIP Motion or which otherwise affects the effectiveness of the same.

j.  The entry of an order in any of the Bankruptcy Cases granting relief from the automatic stay so as to allow a third party or third parties to proceed against the collateral pledged pursuant to the Second DIP Loan, of the Debtors or to commence or continue any prepetition litigation against any of the Debtors involving potential liability not covered by insurance, in excess of $10,000.00 in the aggregate.

k.  The entry hereafter of any non-monetary, judgment or order with respect to a postpetition event against any of the Debtors which does or would reasonably be expected to (i) cause a material adverse change in the financial condition, businesses, prospects, operations or assets of any of the Debtors or (ii) have a material adverse effect on the rights and remedies of the Lenders hereunder, and there shall be a period of ten (10) consecutive days during which a stay of

14

enforcement of such judgment or order, by reason of a pending appeal or otherwise, shall not be in effect.

l. The Interim DIP Order or final order on the Second DIP Motion being amended or modified without the consent of Lenders.

vii. The Debtors will further adequately protect the Lenders by granting the Lenders a security interest in all of the Cash Collateral, which the Debtor shall be able to use in accordance with the Budget as submitted in the Bankruptcy Cases at Docket Entry No. 62.

viii. Any rights, liens and interests granted to the Lenders hereunder shall be provided, *pari passu*, to all Lenders for funding the Second DIP Loan.

(b) Upon entry of this Second Final DIP Order, the Debtors are hereby authorized to borrow, borrowings in the aggregate amount of no more than an aggregate of $800,000.00 for the Second DIP Loan with Redmont and ServisFirst funding no more than a total of $300,000.00 each and NobleBank funding no more than $200,000.00, which includes the aggregate principal amount of up to $800,000.00 in new lending (plus interest, fees and the expenses and amounts provided for in the Second DIP Motion), subject to and in accordance with this Second Final DIP Order.

(c) In accordance with the terms of this Second Final DIP Order and the Second DIP Motion, the proceeds of the Second DIP Loan shall be used solely for the purposes of funding expenses in accordance with the Budget submitted by the Debtor in connection with the Second DIP Motion.

(d) In furtherance of the foregoing and without further approval of this Court, the Debtors are authorized, and the automatic stay imposed by Bankruptcy Code section 362 is hereby lifted to the extent necessary and applicable, to perform all acts and to make, execute and deliver all instruments and documents (including, without limitation, a Second DIP Loan note, a Second DIP Loan loan agreement, any security and pledge agreement, and any other documents executed in connection with the Second DIP Loan (collectively, the "**Second DIP Loan Documents**"), and to pay all fees, expenses and other amounts that may be reasonably required or

15

necessary for the Debtors' performance of their obligations under the Second DIP Loan including, without limitation:

      i.   the execution, delivery and performance of the Second DIP Loan Loan Documents;

      ii.   the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the Second DIP Loan Loan Documents (in each case in accordance with the terms of this Second Final DIP Order and the Second DIP Motion and in such form as the Debtors, and the Lenders may agree); and

      iii.   the performance of all other acts required under or in connection with this Second Final DIP Order and the Second DIP Motion.

   7.  **<u>Budget.</u>**

   (a)  All advances under the Second DIP Loan and the Cash Collateral shall be used by the Debtors solely to fund the Debtors' operation and to conduct and pursue a reorganization process as set forth herein, in accordance with the Budget as approved by the Lenders, as such Budget may be modified with the Lenders' written consent and without further order of the Court.  Compliance with the Budget will be measured every week of the Bankruptcy Cases.

   (b)  For the avoidance of doubt, (i) the Debtors may amend the Budget with the written consent of the Lenders, provided that the total amount of funding provided pursuant to the Budget shall not exceed the total amount of the DIP Obligations authorized by the Court; and (ii) at any given time, the Debtors' actual receipts and cash disbursements may, on a cumulative basis, vary from the Budget by no more than 10% (the "**Permitted Variance**").  The Debtors shall provide the Lenders with weekly cumulative variance reporting on a line item basis (including for

sales, cash receipts, and cash disbursements), which reporting shall (a) detail the variance, if any, of actual cash disbursements and actual cash receipts from the Budget and (b) provide an explanation of any per line variance greater than 10% (the "**Variance Report**").

(c)     The Budget shall be provided on a weekly basis and broken out by weeks including a 13-week cash flow projection.

8.     **Reporting Requirements/Access to Records**.  The Debtors shall provide the Lenders with all reporting and other information required to be provided to the Lenders under the Prepetition Loan Documents or DIP Loan Documents, the Second DIP Motion of this Second Final DIP Order.  Duplicate copies shall be provided to the United States Bankruptcy Administrator for the Northern District of Alabama (the "**Bankruptcy Administrator**").  In addition to, and without limiting, whatever rights to access the Lenders have under the Prepetition Loan Documents, DIP Loan Documents or Second DIP Motion, upon reasonable notice, at reasonable times during normal business hours, the Debtors shall permit representatives, agents, and employees of the Lenders to: (i) have access to and inspect the Debtors' assets; (ii) examine the Debtors' books and records; and (iii) discuss the Debtors' affairs, finances, and condition with the Debtors' officers and financial advisors.

9.     **DIP Superpriority Claim**.  Pursuant to Bankruptcy Code section 364(c)(1), all of the DIP Obligations shall constitute allowed senior administrative expense claims of the Lenders against the Debtors' estates (the "**DIP Superpriority Claim**") (without the need to file any proof of claim) with priority over any and all administrative expenses, adequate protection claims, diminution claims and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in Bankruptcy Code sections 503(b) and 507(b), and over any and all administrative

17

expenses or other claims arising under Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113, or 1114 or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall for the purposes of Bankruptcy Code section 1129(a)(9)(A) be considered administrative expenses allowed under Bankruptcy Code section 503(b) and which shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, specifically excluding the proceeds of any claims or causes of action arising under chapter 5 of the Bankruptcy Code (the "**Avoidance Actions**") but including any claims or causes of action under section 549 of the Bankruptcy Code, subject only to the payment of all fees required to be paid to the Clerk of the Court and to the Bankruptcy Administrator under section 1930(a) of title 28 of the United States Code. Except as set forth in, or permitted by, this Second Final DIP Order, no other superpriority claims shall be granted or allowed in the Bankruptcy Cases.

10. **DIP Liens**. As security for the DIP Obligations, effective and perfected upon the date of this Second Final DIP Order, and without the necessity of the execution, recordation of filings of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, or the possession or control by the Lenders of, or over, any DIP Collateral (as defined below), the following security interests and liens are hereby granted by the Debtors to the Lenders (all property identified in clauses (a), (b) and (c) below being collectively referred to as the "**DIP Collateral**"), subject only to the Permitted Liens (if any) (all such liens and security interests granted to the Lenders, pursuant to this Second Final DIP Order and the Second DIP Motion, the "**DIP Liens**"):

(a) First Lien on Unencumbered Property. Pursuant to Bankruptcy Code section 364(c)(2), a valid, binding, continuing, enforceable, fully-perfected first priority senior

18

security interest in and lien upon all prepetition and postpetition property of the Debtors, whether existing on the Petition Date or thereafter acquired that, on or as of the Petition Date is not subject to valid, perfected and non-avoidable liens (or perfected after the Petition Date to the extent permitted by Bankruptcy Code section 546(b)) including, without limitation, any unencumbered cash of the Debtors (whether maintained with the Lenders or otherwise) and any investment of such cash, accounts, inventory, goods, contract rights, mineral rights, instruments, documents, chattel paper, patents, trademarks, copyrights, and licenses therefor, accounts receivable, receivables and receivables records, general intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, contracts, owned real estate, real property leaseholds, fixtures, deposit accounts, commercial tort claims, securities accounts, instruments, investment property, letter-of-credit rights, supporting obligations, vehicles, machinery and equipment, real property, leases (and proceeds from the disposition thereof), all of the issued and outstanding capital stock of the Debtors, other equity or ownership interests, including equity interests in subsidiaries and non-wholly-owned subsidiaries, money, investment property, causes of action (excluding the proceeds of Avoidance Actions but including those under section 549 of the Bankruptcy Code), and all cash and non-cash proceeds, rents, products, substitutions, accessions, profits and supporting obligations of any of the collateral described above, whether in existence on the Petition Date or thereafter created, acquired, or arising and wherever located; *provided*, that the foregoing collateral shall not include assets or property upon which, and solely to the extent that, the grant of a DIP Lien as contemplated by this Second Final DIP Order, would constitute a default or event of default under an agreement with the Debtors in existence as of the Petition Date (and such default or event of default would not be excused by operation of the Bankruptcy Code), but shall include the proceeds thereof.

19

(b)      Liens Junior to Certain Other Liens.  Pursuant to Bankruptcy Code section 364(c)(3), a valid, binding, continuing, enforceable, fully-perfected security interest in and lien upon all prepetition and postpetition property of the Debtors (other than the property described in clauses (a) or (b) of this paragraph 10, as to which the liens and security interests in favor of the Lenders will be as described in such clauses), whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable liens in existence immediately prior to the Petition Date, if any, that are senior to the liens securing the Prepetition Obligations owed to Lenders or to valid and unavoidable liens in existence immediately prior to the Petition Date, if any, that are perfected subsequent to the Petition Date as permitted by Bankruptcy Code section 546(b) that are senior to the liens securing the Prepetition Obligations owed to Lenders, which security interests and liens in favor of the Lenders are junior only to such valid, perfected and unavoidable liens (collectively, the "**Permitted Liens**").

11.      **Limitation on Charging Expenses Against Collateral**.      Effective as of the Petition Date, no expenses of administration of the Bankruptcy Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Prepetition Collateral or the DIP Collateral or the Lenders pursuant to Bankruptcy Code sections 105(a) or 506(c) or any similar principle of law or equity, without the prior written consent of the Lenders and no such consent shall be implied from any other action, inaction, or acquiescence by the Lenders.

12.      **No Marshaling/Application of Proceeds**.  Effective as of the Petition Date, the Lenders shall be entitled to apply the payments or proceeds of the DIP Collateral and the Prepetition Collateral in accordance with the provisions of this Second Final DIP Order, the Second DIP Motion, the Prepetition Loan Documents and the Second DIP Loan Loan Documents,

Case 19-04687-DSC11    Doc 87    Filed 01/06/20    Entered 01/06/20 16:09:26    Desc Main
Document      Page 20 of 44

as applicable, and in no event shall the Lenders be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or Prepetition Collateral.

13.     **Equities of the Case**.  Effective as of the Petition Date, the Lenders shall be entitled to all of the rights and benefits of Bankruptcy Code section 552(b), and the "equities of the case" exception under Bankruptcy Code section 552(b) shall not apply to such parties with respect to the proceeds, products, offspring or profits of any of the Prepetition Collateral or the DIP Collateral, as applicable.

14.     **Use of Cash Collateral**.  The Debtors are hereby authorized to use all Cash Collateral of the Lenders, but solely for the purposes set forth in this Second Final DIP Order and in accordance with the Budget and this Second Final DIP Order.  Except on the terms and conditions of this Second Final DIP Order, the Debtors shall be enjoined and prohibited from at any time using the Cash Collateral.

15.     **Information Rights**.  The Debtors shall promptly provide the Lenders and their professionals, with all required financial reporting and other periodic reporting that is required to be provided to the Lenders under the Second DIP Motion and this Second Final DIP Order.

16.     **Section 507(b) Reservation**.  Nothing herein shall impair or modify the application of Bankruptcy Code section 507(b) in the event that the adequate protection provided to the Lenders are insufficient to compensate for any diminution in value of their interests in the Prepetition Collateral during the Bankruptcy Cases.  Nothing contained herein shall be deemed a finding by this Court, or an acknowledgment by the Lenders that the adequate protection granted herein does in fact adequately protect the Lenders against any diminution in value of their respective interests in the Prepetition Collateral (including the Cash Collateral).

17.     **Restrictions on Disposition of Material Assets Outside the Ordinary Course of**

**Business**.  Except as expressly permitted by the Lenders, the Debtors shall not use, sell or lease any material assets outside the ordinary course of business, or seek authority of the Court to the extent required by Bankruptcy Code section 363, without obtaining the prior written consent of the Lenders at least five (5) days (or such shorter period as the Lenders may agree) prior to the date on which the Debtors seek this Court's authority for such use, sale or lease.  In the event of any such sale, lease, transfer, license, or other disposition of property that constitutes DIP Collateral outside the ordinary course of business (to the extent permitted by the Second DIP Motion and this Second Final DIP Order), the Debtors are authorized and shall promptly pay, without further notice or order of the Court, the Lenders one hundred percent (100%) of the net cash proceeds resulting therefrom no later than the second business day following receipt of such proceeds.  Upon payment in full of the DIP Obligations, the Debtors are authorized and shall promptly pay, without further notice or order of the Court, the Lenders all remaining or additional net cash proceeds as is required to pay the Prepetition Obligations (to the extent outstanding), no later than the second business day following receipt of such proceeds.  In the event of any casualty, condemnation, or similar event with respect to property that constitutes DIP Collateral, the Debtors are authorized and shall promptly pay to the Lenders, for the benefit of the Lenders, any insurance proceeds, condemnation award, or similar payment (excluding any amounts on account of any D&O policies) no later than the second business day following receipt of payment by the Debtors, unless the Lenders consent, each in its sole discretion, in writing, to the funds being reinvested by the Debtors.

18.    **Insurance**.  At all times the Debtors shall maintain casualty and loss insurance coverage for the Prepetition Collateral and the DIP Collateral on substantially the same basis as maintained prior to the Petition Date.

22

19.     **Reservation of Rights of the Lenders**.

(a)     Notwithstanding any other provision in this Second Final DIP Order to the contrary, the entry of this Second Final DIP Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair: (a) any of the rights of any of the Lenders to seek any other or supplemental relief in respect of the Debtors including the right to seek additional adequate protection; (b) any of the rights of the Lenders under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of any of the Lenders to (i) request modification of the automatic stay of Bankruptcy Code section 362, (ii) request dismissal of any of the Bankruptcy Cases, conversion of any of the Bankruptcy Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers in the Bankruptcy Cases, (iii) seek to propose, subject to the provisions of Bankruptcy Code section 1121, a chapter 11 plan or plans; or (c) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of any of the Lenders. The delay in or failure of the Lenders to seek relief or otherwise exercise their rights and remedies shall not constitute a waiver of any of the Lenders' rights and remedies.

(b)     Nothing contained in this Second Final DIP Order is intended or to be construed to alter or subordinate the lien of ServisFirst as to any collateral that secures an SBA guaranteed loan, or to alter, impair, hinder or nullify the SBA guarantees associated with certain loans made by ServisFirst. To the extent any provision of this Second Final DIP Order could be interpreted to impair any SBA guaranty granted in favor of ServisFirst, such interpretation shall be denied. Furthermore, ServisFirst may move this Court to amend this Second Final DIP Order as necessary to maintain the viability of any SBA guaranty as existed on the Petition Date regardless of any deadlines set forth in the Federal Rules of Bankruptcy Procedure or otherwise.

23

20.     **Termination Event; Maturity**.  Subject to paragraph 21 of this Second Final DIP Order, the Debtors' authorization to use the Cash Collateral and the proceeds of the Second DIP Loan pursuant to this Second Final DIP Order shall automatically terminate, and the DIP Obligations shall become due and payable, without further notice or action by this Court following the earliest to occur of any of the following (each a "**Termination Event**") (a) the occurrence of an Event of Default (as defined herein), (b) the Debtors' failure to (i) comply with any provision of this Second Final DIP Order or (ii) comply with any other covenant or agreement specified in the Second DIP Motion or this Second Final DIP Order (which covenants and agreements are explicitly incorporated by reference into this Second Final DIP Order) or (c) the occurrence of the Maturity Date.

21.     **Remedies Upon a Termination Event**.  The Debtors shall immediately provide notice to counsel to the Lenders of the occurrence of any Termination Event, at which time the Debtors' ability to use Cash Collateral hereunder shall terminate and the DIP Obligations shall become due and payable.  Upon the occurrence of a Termination Event and following the giving of not less than three (3) business days' advance written notice, which may be by email (the "**Enforcement Notice**") to counsel to the Debtors and the Office of the Bankruptcy Administrator (the "**Notice Period**"), (a) the Lenders may exercise any rights and remedies against the DIP Collateral, available to them under this Second Final DIP Order, the Second Interim DIP Order, the Second DIP Motion, the Prepetition Loan Documents, the Second DIP Loan Loan Documents and applicable non-bankruptcy law, including but not limited to terminating all commitments to extend credit under the Second DIP Loan and (b) the Lenders may exercise any rights and remedies to satisfy the Prepetition Obligations and the DIP Obligations.  The only permissible basis for the Debtors or any other party to contest, challenge or object to an Enforcement Notice shall be solely

with respect to the validity of the Termination Event(s) giving rise to such Enforcement Notice (*i.e.*, whether such Termination Event(s) validly occurred and have not been cured or waived in accordance with this Second Final DIP Order). The automatic stay pursuant to Bankruptcy Code section 362 shall be automatically terminated with respect to the Lenders at the end of the Notice Period, without further notice or order of this Court, unless the Lenders elects otherwise in written notice to the Debtors, which may be by email, and the Lenders shall be permitted to exercise all rights and remedies set forth herein, in the Second DIP Motion, and as otherwise available at law against the DIP Collateral and/or Prepetition Collateral, without any further order of or application or motion to this Court, and without restriction or restraint imposed by any stay under Bankruptcy Code sections 362 or 105, or otherwise, against (x) the enforcement of the liens and security interests in the DIP Collateral or the Prepetition Collateral, or (y) the pursuit of any other rights and remedies granted to the Lenders pursuant to the Second DIP Motion, the Prepetition Loan Documents, the Second DIP Loan Loan Documents or this Second Final DIP Order; *provided*, that during the Notice Period the Debtors may use the proceeds of the Second DIP Loan (to the extent drawn prior to the occurrence of a Termination Event) or the Cash Collateral to fund operations in accordance with the Second DIP Motion and the Budget and; *provided, further* that during the Notice Period the Debtors, the Lenders consent to a hearing on an expedited basis to consider whether a Termination Event has occurred; *provided, further*, that if a hearing to consider the foregoing is requested to be heard before the end of the Notice Period but is scheduled for a later date by this Court, the Notice Period shall be automatically extended to the date of such hearing, but in no event later than five (5) business days after delivery of the Enforcement Notice.

22. **No Waiver for Failure to Seek Relief**. The failure or delay of the Lenders to exercise rights and remedies under this Second Final DIP Order, the Second Interim DIP Order,

Case 19-04687-DSC11    Doc 87    Filed 01/06/20    Entered 01/06/20 16:09:26    Desc Main
Document      Page 25 of 44

the Second DIP Motion, the Prepetition Loan Documents, the Second DIP Loan Loan Documents or applicable law, as the case may be, shall not constitute a waiver of their respective rights hereunder, thereunder or otherwise.

23. **Perfection of the DIP Liens and Adequate Protection Liens**.

(a) The Lenders are hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, depository account control agreements, notices of lien or similar instruments in any jurisdiction in order to validate and perfect the liens and security interests granted hereunder. Whether or not the Lenders choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of entry of this Second Final DIP Order. If the Lenders determine to file or execute any financing statements, agreements, notice of liens or similar instruments, the Debtors shall cooperate and assist in any such execution and/or filings as reasonably requested by the Lenders, and the automatic stay shall be modified to allow such filings.

(b) A certified copy of this Second Final DIP Order may, in the discretion of the Lenders, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Second Final DIP Order for filing and recording; *provided, however,* that notwithstanding the date of any such filing, the date of such perfection shall be the date of this Second Final DIP Order.

(c) Any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of

26

any fees or obligations to any governmental entity, in order for any Debtors to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code. Any such provision shall have no force and effect with respect to the granting of the DIP Liens on such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtors in accordance with the terms of the Second DIP Motion or this Second Final DIP Order.

24. **Preservation of Rights Granted Under this Second Final DIP Order**.

(a) In the event this Second Final DIP Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise, any liens or claims granted to the Lenders hereunder arising prior to the effective date of any such vacatur, reversal or modification of this Second Final DIP Order shall be governed in all respects by the original provisions of this Second Final DIP Order, including entitlement to all rights, remedies, privileges and benefits granted herein, and the Lenders shall be entitled to the protections afforded in Bankruptcy Code section 363(m) to good faith purchasers and lessees with respect to all uses of the Prepetition Collateral (including the Cash Collateral).

(b) Unless and until all DIP Obligations are indefeasibly paid in full, in cash, and all commitments to extend credit under the Second DIP Loan are terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly (i) except as permitted under the Second DIP Motion and with the prior written consent of the Lenders (x) any modification, stay, vacatur, or amendment of this Second Final DIP Order, (y) a priority claim for any administrative expense, secured claim or unsecured claim against any of the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation, any

27

administrative expense of the kind specified in Bankruptcy Code sections 503(b), 507(a) or 507(b)) in the Bankruptcy Case, equal or superior to the DIP Superpriority Claim, or the Prepetition Obligations (or the liens and security interests securing such claims and obligations), or (z) any other order allowing use of the DIP Collateral; (ii) except as permitted under the Second DIP Motion, any lien on any of the DIP Collateral or the Prepetition Collateral with priority equal or superior to the DIP Liens or the Prepetition Liens, as the case may be; (iii) the use of the Cash Collateral for any purpose other than as permitted in the Second DIP Motion and this Second Final DIP Order; (iv) except as set forth in the Second DIP Motion, the return of goods pursuant to section 546(h) of the Bankruptcy Code (or other return of goods on account of any prepetition indebtedness) to any creditor of any Debtors; (v) an order converting or dismissing any of the Bankruptcy Cases; (vi) an order appointing a chapter 11 trustee in any of the Bankruptcy Cases; or (vii) an order appointing an examiner with enlarged powers in any of the Bankruptcy Cases.

(c)     Notwithstanding any order dismissing any of the Bankruptcy Cases under Bankruptcy Code section 1112 or otherwise entered at any time, (x) the DIP Liens, the DIP Superpriority Claim, and the other administrative claims granted pursuant to this Second Final DIP Order shall continue in full force and effect and shall maintain their priorities as provided in this Second Final DIP Order until all DIP Obligations are indefeasibly paid in full, in cash (and such DIP Liens, DIP Superpriority Claim and the other administrative claims granted pursuant to this Second Final DIP Order, shall, notwithstanding such dismissal, remain binding on all parties in interest); and (y) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (x) above.

(d)     Except as expressly provided in this Second Final DIP Order or in the Second DIP Motion, the DIP Liens and all other rights and remedies of the Lenders granted by the

Case 19-04687-DSC11    Doc 87    Filed 01/06/20    Entered 01/06/20 16:09:26    Desc Main
Document      Page 28 of 44

provisions of this Second Final DIP Order and the Second DIP Motion shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Bankruptcy Cases to a case under chapter 7, dismissing any of the Bankruptcy Cases, terminating the joint administration any of the Bankruptcy Cases, (ii) the entry of an order approving the sale of any Prepetition Collateral or DIP Collateral pursuant to Bankruptcy Code section 363(b) or (iii) the entry of an order confirming a plan of reorganization in any of the Bankruptcy Cases and, pursuant to Bankruptcy Code section 1141(d)(4), the Debtors have waived any discharge as to any of the DIP Obligations. The terms and provisions of this Second Final DIP Order and the Second DIP Motion shall continue in the Bankruptcy Cases, in any successor cases if the Bankruptcy Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code. The DIP Liens, the DIP Superpriority Claim and all other rights and remedies of the Lenders granted by the provisions of this Second Final DIP Order shall continue in full force and effect until the DIP Obligations and the Prepetition Obligations are indefeasibly paid in full, in cash (or, with respect to the DIP Obligations, otherwise satisfied in a manner agreed to by the Lenders).

25. **Expenses and Indemnification**. The Debtors will, jointly and severally, indemnify the Lenders their respective affiliates, successors and assigns and the officers, directors, employees, agents, advisors, controlling persons and members of each of the foregoing (each an "**Indemnified Person**") and hold them harmless from and against any and all losses, claims, damages, costs, expenses (including but not limited to reasonable and documented legal fees and expenses) and liabilities arising out of or relating to the Prepetition Loan Documents, and the execution or delivery of the Second DIP Loan Documents, transactions contemplated hereby and thereby and any actual or proposed use of the proceeds of any loans made under the Second DIP Loan; *provided*, that, no such person will be indemnified for costs, expenses or liabilities to the

Case 19-04687-DSC11    Doc 87    Filed 01/06/20    Entered 01/06/20 16:09:26    Desc Main
Document      Page 29 of 44

extent determined by a final, non-appealable judgment of a court of competent jurisdiction to have been incurred solely by reason of the actual fraud, gross negligence or willful misconduct of such person (or their related persons). No Indemnified Person shall have any liability (whether direct or indirect, in contract, tort or otherwise) to the Debtors or any shareholders or creditors of the Debtors for or in connection with the transactions contemplated hereby, except to the extent such liability is found in a final non-appealable judgment by a court of competent jurisdiction to have resulted solely from such Indemnified Person's actual fraud, gross negligence or willful misconduct, and in no event shall any Indemnified Person be liable on any theory of liability for any special, indirect, consequential or punitive damages.

26. **Limitation on Use of Second DIP Loan Proceeds, DIP Collateral and Cash Collateral**. Except as set forth herein this Second Final DIP Order, none of the Second DIP Loan, the DIP Collateral or the Prepetition Collateral, including the Cash Collateral may be used: (a) to investigate (except as expressly provided herein), initiate, prosecute, join, or finance the initiation or prosecution of any claim, counterclaim, action, suit, arbitration, proceeding, application, motion, objection, defense, or other litigation of any type against the Lenders or seeking relief that would impair the rights and remedies of the Lenders, the Prepetition Loan Documents, the Second DIP Loan Loan Documents or this Second Final DIP Order, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtors in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense, or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment, determination, declaration, or similar relief that would impair the ability of any of the Lenders to recover on the DIP Collateral or the Prepetition Collateral or seeking affirmative relief against any of the Lenders related to the DIP Obligations,

30

or the Prepetition Obligations; (ii) invalidate, set aside, avoid, or subordinate, in whole or in part, the DIP Obligations or the Lenders' liens or security interests in the DIP Collateral, the Prepetition Obligations or the Prepetition Liens; or (iii) seek monetary, injunctive, or other affirmative relief against the Lenders, or its liens on or security interests in the DIP Collateral or the Prepetition Collateral that would impair the ability of any of the Lenders to assert or enforce any lien, claim, right, or security interest or to realize or recover on the DIP Obligations or the Prepetition First Lien Obligations; (b) to object to or challenge in any way the legality, validity, priority, perfection, or enforceability of the claims, liens, or interests (including the Prepetition Liens) held by or on behalf of the Lenders related to the Prepetition Obligations, or by or on behalf of the Lenders related to the DIP Obligations; (c) to assert, commence, or prosecute any claims or causes of action whatsoever, including, without limitation, any Avoidance Actions (as defined herein) related to the DIP Obligations, the DIP Liens, the Prepetition Obligations, or the Prepetition Liens; or (d) prosecute an objection to, contest in any manner, or raise any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP Liens or any other rights or interests of the Lenders related to the DIP Obligations or the DIP Liens, or any of the Prepetition Liens or any other rights or interests of any of the Prepetition First Lien Parties related to the Prepetition First Lien Obligations or the Prepetition First Liens.

27. **Effect of Stipulations on Third Parties**.

(a) The acknowledgments, stipulations, admissions, waivers and releases set forth in this Second Final DIP Order shall be binding on the Debtors, their estates and their respective representatives, successors, and assigns. The acknowledgments, stipulations, admissions, waivers and releases contained in this Second Final DIP Order shall also be binding upon all other parties in interest, including a Creditor's Committee, as defined herein, or any chapter 7 or chapter 11

31

trustee appointed or elected for the Debtors (a "**Trustee**"), unless:

     i.    such party, in each case, with requisite standing, has duly filed an adversary proceeding challenging the validity, perfection, priority, extent or enforceability of the Prepetition Liens, or the Prepetition Obligations, or otherwise asserting or prosecuting any Avoidance Actions or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "**Claims and Defenses**") against the Lenders in connection with any matter related to the Prepetition Collateral, the Prepetition Liens or the Prepetition Obligations by no later than December 27, 2019 (the "**Challenge Period**"); the event that any of the Bankruptcy Cases are converted to chapter 7, a chapter 11 trustee is appointed in any of the Bankruptcy Cases, or an official committee of unsecured creditors is appointed pursuant to § 1102 of the Bankruptcy Code (a "**Creditor's Committee**"), then, in each such case, shall be extended for a period of forty-five (45) days solely with respect to any Trustee or Creditor's Committee, commencing on the occurrence of either conversion, appointment of a Trustee, or appointment of a Creditor's Committee and

     ii.    an order is entered by a court of competent jurisdiction and becomes final and non-appealable in favor of the plaintiff sustaining any such challenge or claim in any such duly filed adversary proceeding.

If a party in interest files a motion seeking standing to assert Claims and Defenses (the "**Standing Motion**") in advance of expiration of the Challenge Period, then, the Challenge Period shall be extended for a period of five (5) days after entry of an order ruling on the Standing Motion, solely with respect to those Claims and Defenses to which the party in interest has specifically and expressly sought standing to pursue such Standing Motion.

The failure to timely file an adversary proceeding prior to the expiration of the Challenge

Case 19-04687-DSC11   Doc 87   Filed 01/06/20   Entered 01/06/20 16:09:26   Desc Main
Document   Page 32 of 44

Period, or extended period as provided here, results, without court of the following: (a) the Prepetition Obligations shall constitute allowed claims, not subject to any Claims and Defenses (whether characterized as a counterclaim, setoff, subordination, recharacterization, defense, avoidance, contest, attack, objection, recoupment, reclassification, reduction, disallowance, recovery, disgorgement, attachment, "claim" (as defined by Bankruptcy Code section 101(5)), impairment, subordination (whether equitable, contractual or otherwise), or other challenge of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law), for all purposes in these Bankruptcy Cases and any subsequent chapter 7 cases, if any; (b) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected and of the priority specified in paragraph 4.xxiii of this Second Final DIP Order, not subject to setoff, subordination, defense, avoidance, impairment, disallowance, recharacterization, reduction, recoupment, or recovery; and (c) the Prepetition Obligations, the Prepetition Liens on the Prepetition Collateral and the Lenders shall not be subject to any other or further challenge and any party in interest shall be forever enjoined and barred from seeking to exercise the rights of the Debtors' estates or taking any such action, including any successor thereto (including any estate representative or a Trustee, whether such Trustee is appointed or elected prior to or following the expiration of the Challenge Period).

If any such adversary proceeding is timely filed prior to the expiration of the Challenge Period, however, then (a) the stipulations and admissions contained in this Second Final DIP Order shall nonetheless remain binding and preclusive on the party in the Bankruptcy Cases, including any Trustee, except as to any stipulations or admissions that are specifically and expressly challenged in such adversary proceeding and (b) any Claims and Defenses not brought in such adversary proceeding shall be forever barred; *provided*, that, if and to the extent any challenges to

33

a particular stipulation or admission are withdrawn, denied or overruled by a final non-appealable order, such stipulation also shall be binding on the Debtors' estates and all parties in interest.

(b)     Nothing in this Second Final DIP Order vests or confers on any person (as defined in the Bankruptcy Code) standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, any challenge with respect to the Prepetition Loan Documents or the Prepetition Obligations.

28.     **Release**.  Subject to the rights and limitations set forth in paragraphs 25 and 26 of this Second Final DIP Order, the Debtors and the Debtors' estates, on their own behalf and on behalf of any predecessors, successors, and assigns shall to the maximum extent permitted by applicable law, unconditionally, irrevocably and fully forever release, remise, acquit, relinquish, irrevocably waive and discharge each of the Lenders and their former, current or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest, each in their capacity as such, of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description that exist on the date hereof with respect to or relating to the DIP Obligations, the DIP Liens, the Prepetition Obligations or the Prepetition Liens, as applicable, including, without limitation, (i) any so-called "lender liability" or equitable subordination claims or defenses, (ii) any and all claims and causes of action

34

arising under the Bankruptcy Code, and (iii) any and all claims and causes of action regarding the validity, priority, extent, enforceability, perfection or avoidability of the liens or claims of the Lenders.

29. **Sale & Bidding Procedures.** The Debtors shall file a motion in form acceptable to the Lenders for approval of bid procedures (the "**Bid Procedures**") and sale of virtually all of the Debtors' cumulative business assets (the "**Sale Assets**") in accordance with § 363 of the Bankruptcy Code with one more of the Lenders serving as a stalking horse bidder for the Sale Assets (the "**Sale Motion**"). The Sale Motion shall be filed on or before January 6, 2020. The Bid Procedures shall be approved by an order of the Court on or before January 24, 2020. An order approving the sale of the Sale Assets shall be entered the Court in form acceptable to the Lenders on or before February 11, 2020.

30. **Credit Bidding**. (a) The Lenders, or any assignee of the Lenders, shall have the unqualified right to credit bid up to the full amount of any DIP Obligations in the sale of any of the Debtors' assets, including (i) pursuant to Bankruptcy Code section 363, (ii) a plan of reorganization or a plan of liquidation under Bankruptcy Code section 1129, or (iii) a sale or disposition by a chapter 7 trustee for any Debtors under Bankruptcy Code section 725, and (b) subject to the indefeasible payment in full in cash of the DIP Obligations, the Lenders shall have the right to credit bid up to the full amount of the Second DIP Loan plus any other Prepetition Obligations in the sale of any of the Debtors' assets, including, but not limited to, (i) pursuant to Bankruptcy Code section 363, (ii) a plan of reorganization or a plan of liquidation under Bankruptcy Code section 1129, or (iii) a sale or disposition by a chapter 7 trustee for any of the Debtors under Bankruptcy Code section 725. Any such right to credit bid shall be subject to any Lender's relative lien position as to other Lenders that have participated in the DIP Obligations.

35

31. **Second Final DIP Order Governs**. In the event of any inconsistency between the provisions of this Second Final DIP Order, the Second Interim DIP Order or the Second DIP Motion, the provisions of this Second Final DIP Order shall govern.

32. **Binding Effect; Successors and Assigns**. The Second DIP Motion and the provisions of this Second Final DIP Order, including all findings herein, shall be binding upon all parties in interest in the Bankruptcy Cases, including without limitation, the Lenders and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to Bankruptcy Code section 1104, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the Debtors) and shall inure to the benefit of the Lenders.

33. **Limitation of Liability**. In determining to make any loan under the Second DIP Motion, permitting the use of Cash Collateral, or exercising any rights or remedies as and when permitted pursuant to this Second Final DIP Order, the Second DIP Motion or the Prepetition Loan Documents, the Lenders shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors or their respective businesses (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 *et seq*. as amended, or any similar federal or state statute), nor shall they owe any fiduciary duty to any of the Debtors, their creditors or estates, or constitute or be deemed to constitute a joint venture or partnership with any of the Debtors. Furthermore, nothing in this Second Final DIP Order, the Second Interim DIP Order, the Second DIP Motion or the Prepetition Loan Documents shall in any way be construed or interpreted to impose or allow the imposition

36

upon the Lenders of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their respective affiliates (as defined in Bankruptcy Code section 101(2)).

34. **No Impact on Compliance with Laws**. Nothing in this Second Final DIP Order shall relieve, limit, expand, or otherwise modify the Debtors' obligations pursuant to 28 U.S.C. § 959(b).

35. **Government Matters**. Notwithstanding anything to the contrary in this Second Final DIP Order, nothing in this Second Final DIP Order shall: (i) impair, adversely affect, or expand any right under applicable law of any governmental unit with respect to any financial assurance, letter of credit, trust, surety bond, or insurance proceeds; (ii) impair, adversely affect, or expand the United States' or any state's rights, claims, and defenses under applicable law of set-off and recoupment, or those of any of the foregoing's respective agencies, departments or agents, and all such rights, claims and defenses shall be preserved in their entirety; (iii) waive, impair, adversely affect, or expand the United States' rights (if any), state's rights (if any), or the rights of an Indian tribe (if any), under applicable law, to refuse to provide its consent to the proposed assumption and/or assignment of any lease or executory contract where it is a party to such lease or executory contract or otherwise has a consent right with respect to any proposed assumption or assignment under applicable law; or (iv) limit any governmental unit in the exercise of its police powers in accordance with 11 U.S.C. § 362(b)(4). Additionally, paragraph 32 of this Second Final DIP Order shall apply to environmental liabilities to governmental units only so long as (I) the actions of the Lenders or any successors or predecessors thereof have not constituted, and do not constitute, actual participation in the management or operational affairs of a facility owned or operated by the Debtors within the meaning of 42 U.S.C. § 9601(20)(F) or (II) the

37

Lenders or any successor or predecessors thereof are not otherwise liable under applicable law as a "controlling person," "responsible person," or "owner" or "operator" with respect to a facility owned or operated by the Debtors. For the avoidance of doubt, nothing in this Second Final DIP Order limits the rights, claims and or defenses of the Debtors in responding to any claims raised or rights asserted by any governmental unit or otherwise limits the Bankruptcy Court's authority to address the matters raised in this paragraph in a subsequent order.

36. **Effectiveness**. Except as provided herein, this Second Final DIP Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Second Final DIP Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Second Final DIP Order.

Dated: January 6, 2020
Birmingham, Alabama

/s/ D. Sims Crawford
D. SIMS CRAWFORD
United States Bankruptcy Judge

**Exhibit A**

**Budget**

**Steel City Pops - Holding**
**Cash Projections**
**From November 2019 to September 2020**

| | | Week Ending 11/9/2019 | Week Ending 11/16/2019 | Week Ending 11/23/2019 | Week Ending 11/30/2019 | Week Ending 12/7/2019 | Week Ending 12/14/2019 | Week Ending 12/21/2019 | Week Ending 12/28/2019 | Week Ending 1/4/2020 | Week Ending 1/11/2020 | Week Ending 1/18/2020 | Week Ending 1/25/2020 | Week Ending 2/1/2020 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Operating Expenses Spend** | | | | | | | | | | | | | | | | |
| Amex | | - | - | - | 4,300 | - | - | - | 4,300 | 4,300 | 4,300 | 4,300 | 4,300 | 4,300 | | |
| Bresco - St. Matthew's Lease | | - | | | - | | | | - | | | | | | | |
| Car Leases | | 16,573 | - | - | 7,915 | - | - | - | 7,915 | - | - | - | - | 7,915 | | |
| Corporate Payroll | | - | 12,000 | - | 12,000 | - | 12,000 | - | 12,000 | - | - | 12,000 | - | 12,000 | | |
| Dues and Subscriptions | | 6,219 | 346 | - | 6,387 | 2,463 | 346 | - | 6,387 | 2,463 | 346 | - | - | 6,387 | | |
| Reduction of Dues and Subscriptions | 33% | (2,052) | (114) | - | (2,108) | (813) | (114) | - | (2,108) | (813) | (114) | - | - | (2,108) | | |
| Event Support Staff | | | | | 1,450 | | | | 1,450 | | | | 1,450 | | | |
| General and Administrative | | 1,000 | 1,000 | 1,000 | 1,000 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | | |
| Insurance - Health/Dental | | 6,611 | - | - | - | 6,611 | - | - | - | 6,611 | - | - | - | - | | |
| Insurance - Liability/WC/Vehicle | | 2,863 | - | - | 10,800 | - | - | - | 10,800 | - | - | - | - | 7,000 | | |
| Legal Fees | | - | - | 8,585 | - | - | - | - | 10,000 | - | - | - | 10,000 | - | | |
| Marketing | | - | - | - | 675 | - | - | - | 7,700 | - | - | - | - | 2,000 | | |
| Meals and Entertainment | | 350 | 350 | 250 | 250 | 350 | 350 | 250 | - | - | 250 | 250 | 250 | 250 | | |
| Misc Travel | | 250 | 250 | 250 | 100 | 400 | 400 | 400 | - | - | 400 | 400 | 400 | 400 | | |
| Professional Fees | | - | - | - | 8,333 | - | - | - | 8,333 | - | - | - | - | 8,333 | | |
| Property Taxes | | - | - | - | - | - | - | - | 11,041 | - | - | - | - | - | | |
| Rent | | 2,400 | - | - | - | 2,400 | - | - | - | 2,400 | - | - | - | - | | |
| Utilities | | - | - | - | - | - | - | - | - | - | - | - | - | - | | |
| Withholding Tax | | - | 1,400 | - | - | - | 1,400 | - | - | - | - | - | 2,400 | - | | |
| Interest Expense | | | | | | | | | | | | | | | | |
|   - Redmont Debt Fund II | | - | - | - | - | - | - | - | - | - | - | - | - | - | | |
|   - ServisFirst Bank | | - | - | - | - | - | - | - | - | - | - | - | - | - | | |
|   - NobleBank | | - | - | - | - | - | - | - | - | - | - | - | - | - | | |
| **Total Operating Expenses** | | 34,214 | 15,232 | 10,085 | 51,102 | 12,211 | 15,182 | 1,450 | 78,618 | 15,761 | 5,982 | 17,750 | 19,600 | 47,277 | | |
| **Income (loss) from Operations** | | (34,214) | (15,232) | (10,085) | (51,102) | (12,211) | (15,182) | (1,450) | (78,618) | (15,761) | (5,982) | (17,750) | (19,600) | (47,277) | | |
| | | | | | | | | | | | | | | | **TOTAL INCOME (LOSS)** | |
| **TOTAL Income (loss) for all entities** | | (69,734) | (49,295) | 1,196 | (86,638) | (49,318) | (23,842) | 3,584 | (93,832) | (63,164) | 1,040 | (27,998) | (17,107) | (89,718) | | (564,824) |

| Steel City Pops - BHAM | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash Projections | | | | 46,966 | | | 45,409 | | | | | 42,599 | | | | |
| From November 2019 to September 2020 | | | | 15,000 | | | 3,000 | | | | | 2,483 | | | | |

| | | Week Ending 11/9/2019 | Week Ending 11/16/2019 | Week Ending 11/23/2019 | Week Ending 11/30/2019 | Week Ending 12/7/2019 | Week Ending 12/14/2019 | Week Ending 12/21/2019 | Week Ending 12/28/2019 | Week Ending 1/4/2020 | Week Ending 1/11/2020 | Week Ending 1/18/2020 | Week Ending 1/25/2020 | Week Ending 2/1/2020 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sales (Less Sales Tax) | | 11,742 | 11,742 | 11,742 | 11,742 | 11,352 | 11,352 | 11,352 | 11,352 | 8,520 | 8,520 | 8,520 | 8,520 | 8,520 | | |
| Vending Sales (Less Sales Tax) | | 3,750 | 3,750 | 3,750 | 3,750 | 750 | 750 | 750 | 750 | 497 | 497 | 497 | 497 | 497 | | |
| Vending Inititive (Less Sales Tax) | | | | | | | | | | | | | | | | |
| Taco Mama Sales (Less Sales Tax) | | | | | | | | | | | | | | 3,333 | | |
| Store Inititive (Less Sales Tax) | | | | | | | | | | | | | | 26,187 | | |
| Wholesale Inititive (Less Sales Tax) | | | | | | | | | | | | | | | | |
| | 67% | | | | | | | | | | | | | | | |
| Total Sales | | 10,379 | 10,379 | 10,379 | 10,379 | 8,108 | 8,108 | 8,108 | 8,108 | 6,041 | 6,041 | 6,041 | 6,041 | 25,820 | | |
| | | | | | | | | | | | | | | | | |
| Cost of Goods Sold Spend | | | | | | | | | | | | | | | | |
| Materials | | 2,076 | 2,076 | 2,076 | 2,076 | 1,622 | 1,622 | 1,622 | 1,622 | 1,208 | 1,208 | 1,208 | 1,208 | 5,164 | | |
| Vending Inititive Expense | | | | | | | | | | | | | | | | |
| Taco Mama Expense | | | | | | | | | | | | | | 2,333 | 2,333 | |
| Wholesale Inititive Expense | | | | | | | | | | | | | | | | |
| Store Inititive Expense | | | | | | | | | | | | | | 17,545 | | |
| Square Fees | | 218 | 218 | 218 | 218 | 170 | 170 | 170 | 170 | 127 | 127 | 127 | 127 | 542 | | |
| Management Pay | | - | 2,708 | - | 2,708 | - | 2,708 | - | 2,708 | - | - | 2,708 | - | 2,708 | | |
| Front Labor Pay | | - | - | - | - | - | - | - | - | - | - | - | - | - | | |
| Production Labor | | - | - | - | - | - | - | - | - | - | - | - | - | - | | |
| Event Labor | | - | 867 | - | 867 | - | 161 | - | 161 | - | - | 102 | - | 102 | | |
| Other Labor | | - | 1,499 | - | 1,499 | - | 1,179 | - | 1,179 | - | - | 1,396 | - | 1,396 | | |
| Commissions | | - | 5,500 | - | 5,500 | - | - | - | - | - | - | - | - | - | | |
| | | | | | | | | | | | | | | | | |
| Total Cost of Goods Sold Spend | | 2,294 | 12,868 | 2,294 | 12,868 | 1,792 | 5,840 | 1,792 | 5,840 | 1,335 | 1,335 | 5,541 | 3,668 | 29,791 | | |
| | | | | | | | | | | | | | | | | |
| Operating Expenses Spend | | | | | | | | | | | | | | | | |
| Dues and Subscriptions | | 77 | | 336 | 549 | 77 | | 336 | 549 | 77 | | 336 | 549 | - | | |
| General and Administrative | | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | | |
| Meals and Entertainment | | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | | |
| Misc Charges (COD, etc) | | | | | | | | | | | | | | | | |
| Property Taxes | | - | - | - | - | - | - | - | 5,788 | - | - | - | - | - | | |
| Rent | | 10,711 | - | - | - | 8,841 | - | - | - | 16,561 | - | - | - | - | | |
| Unemploymet | | - | - | - | - | - | - | - | - | - | - | - | - | - | | |
| Sales Tax | | | | | | | | | | | | | | | | |
| Occupational Tax | | - | - | 40 | - | - | - | 150 | - | - | - | - | 40 | - | | |
| Withholding Tax | | - | - | 1,300 | - | - | - | 1,300 | - | - | - | - | 1,200 | - | | |
| Repairs and Maintenance | | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 400 | 400 | 400 | 400 | 400 | | |
| Territory Travel | | 237 | 237 | 237 | 237 | 237 | 237 | 237 | 237 | 237 | 237 | 237 | 237 | 237 | | |
| Utilities | | 737 | 1,140 | - | 4,598 | 1,473 | 1,140 | - | 4,598 | 1,473 | 1,140 | - | 4,598 | 7,211 | | |
| | 50% | (368) | (570) | - | (2,299) | (737) | (570) | - | (2,299) | (737) | (570) | - | (2,299) | (3,606) | | |
| Vending Fees | | 407 | 407 | 407 | 407 | 107 | 107 | 107 | 107 | 45 | 45 | 45 | 45 | 45 | | |
| Wholesale Costs | | | | | | | | | | | | | | | | |
| Wholesale Travel | | | | | 500 | | | 500 | | | | | | | | |
| Total Operating Expenses Spend | | 12,850 | 2,264 | 3,370 | 5,042 | 11,049 | 1,964 | 3,680 | 10,030 | 18,607 | 1,802 | 1,568 | 5,320 | 4,838 | | |
| Total Expense | | 15,144 | 15,132 | 5,664 | 17,910 | 12,840 | 7,804 | 5,472 | 15,870 | 19,942 | 3,137 | 7,109 | 8,988 | 34,628 | 164788.74 | 164788.74 |
| | | | | | | | | | | | | | | | | |
| Total Cash Available | | (4,765) | (4,752) | 4,716 | (7,530) | (4,732) | 304 | 2,636 | (7,762) | (13,901) | 2,904 | (1,068) | (2,947) | (8,809) | | |

| | | Week Ending 11/9/2019 | Week Ending 11/16/2019 | Week Ending 11/23/2019 | Week Ending 11/30/2019 | Week Ending 12/7/2019 | Week Ending 12/14/2019 | Week Ending 12/21/2019 | Week Ending 12/28/2019 | Week Ending 1/4/2020 | Week Ending 1/11/2020 | Week Ending 1/18/2020 | Week Ending 1/25/2020 | Week Ending 2/1/2020 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Steel City Pops - DTX** | | | | | | | | | | | | | | | |
| **Cash Projections** | | | | | 22,393 | | | | 21,437 | | | | 25,328 | | |
| **From November 2019 to September 2020** | | | | | 15,000 | | | | 12,000 | | | | 4,886 | | |
| | | | | | | | | | | | | | | | |
| **Sales (less Sales Tax)** | | 5,598 | 5,598 | 5,598 | 5,598 | 5,359 | 5,359 | 5,359 | 5,359 | 5,066 | 5,066 | 5,066 | 5,066 | 5,066 | |
| **Vending Sales (Less Sales Tax)** | | 3,750 | 3,750 | 3,750 | 3,750 | 3,000 | 3,000 | 3,000 | 3,000 | 977 | 977 | 977 | 977 | 977 | |
| **Wholesale Sales (Less Sales Tax)** | | - | - | 525 | - | - | - | - | - | - | - | - | - | - | |
| **Wholesale Rental Income** | 67% | - | - | - | - | - | - | - | - | - | - | - | - | - | |
| **Total Sales** | | 6,263 | 6,263 | 6,615 | 6,263 | 5,601 | 5,601 | 5,601 | 5,601 | 4,049 | 4,049 | 4,049 | 4,049 | 4,049 | |
| | | | | | | | | | | | | | | | |
| **Cost of Goods Sold Spend** | | | | | | | | | | | | | | | |
| Materials | | 1,253 | 1,253 | 1,323 | 1,253 | 1,120 | 1,120 | 1,120 | 1,120 | 810 | 810 | 810 | 810 | 810 | |
| Square Fees | | 132 | 132 | 139 | 132 | 118 | 118 | 118 | 118 | 85 | 85 | 85 | 85 | 85 | |
| Management Pay | | - | 4,684 | - | 4,684 | - | 4,884 | - | 4,684 | - | 4,684 | - | 4,684 | | |
| Front Labor Pay | | - | | | | | | | | | | | | | |
| Production Labor | | - | | | | | | | | | | | | | |
| Event Labor | | - | 631 | - | 631 | - | 380 | - | 380 | - | - | 506 | - | 506 | |
| Other Labor | | - | 1,189 | - | 1,189 | - | 929 | - | 929 | - | - | 983 | - | 983 | |
| Commissions | | - | 10,000 | - | 10,000 | - | - | - | - | - | - | - | | | |
| **Total Cost of Goods Sold Spend** | | 1,384 | 17,888 | 1,462 | 17,888 | 1,238 | 7,431 | 1,238 | 7,231 | 895 | 895 | 7,068 | 895 | 7,068 | |
| | | | | | | | | | | | | | | | |
| **Operating Expenses Spend** | | | | | | | | | | | | | | | |
| Dues and Subscriptions | | 125 | 389 | 226 | - | 125 | 389 | 226 | - | 125 | 389 | 226 | - | - | |
| General and Administrative | | 524 | 524 | 524 | 524 | 524 | 524 | 524 | 524 | 400 | 400 | 400 | 400 | 400 | |
| Meals and Entertainment | | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | |
| Misc Charges (COD, etc) | | | | | | | | | | | | | | | |
| Unemployment | | - | - | - | - | - | - | - | - | - | - | - | - | - | |
| Property Taxes | | - | - | - | - | - | - | - | - | - | - | - | - | 7,484 | |
| Rent | | 14,779 | - | - | - | 14,779 | - | - | - | 14,779 | - | - | - | - | |
| Repairs and Maintenance | | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 500 | 500 | 500 | 500 | 500 | |
| Sales Tax | | | | | | | | | | | | | | | |
| Territory Travel | | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | |
| Utilities | | 1,910 | 321 | 1,996 | 317 | 1,910 | 321 | 1,996 | 317 | 1,910 | 321 | 1,996 | 37 | 280 | |
| | 50% | (955) | (161) | (998) | (159) | (955) | (161) | (998) | (159) | (955) | (161) | (998) | (19) | (140) | |
| Vending Fees | | 202 | 202 | 202 | 202 | 202 | 202 | 202 | 202 | 202 | 202 | 202 | 202 | 202 | |
| Wholesale Costs | | - | - | - | 500 | - | - | 500 | - | - | - | 500 | - | 500 | |
| Wholesale Travel | | - | 500 | 500 | - | - | 500 | 500 | - | - | 500 | - | 500 | - | |
| **Total Operating Expenses** | | 17,535 | 2,726 | 3,400 | 2,335 | 17,535 | 2,726 | 3,900 | 1,835 | 17,311 | 2,502 | 2,676 | 1,971 | 9,576 | |
| Total Expenses | | 18,919 | 20,614 | 4,862 | 20,223 | 18,773 | 10,156 | 5,138 | 9,065 | 18,206 | 3,396 | 9,744 | 2,865 | 16,644 | 158,604 |
| | | | | | | | | | | | | | | | |
| **Total Cash Available** | | (12,656) | (14,350) | 1,753 | (13,959) | (13,172) | (4,555) | 463 | (3,464) | (14,157) | 652 | (5,695) | 1,183 | (12,595) | |

| | | Cash Projections | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

**Steel City Pops - FWTX**

Cash Projections: 37,722.26 (Week Ending 11/30/2019); 34,383.39 (Week Ending 12/28/2019); 38,627.85 (Week Ending 2/1/2020)

From November 2019 to September 2020: 10,000.00 (Week Ending 11/30/2019); 3,000.00 (Week Ending 12/28/2019); 11,737.26 (Week Ending 2/1/2020)

| | % | Week Ending 11/9/2019 | Week Ending 11/16/2019 | Week Ending 11/23/2019 | Week Ending 11/30/2019 | Week Ending 12/7/2019 | Week Ending 12/14/2019 | Week Ending 12/21/2019 | Week Ending 12/28/2019 | Week Ending 1/4/2020 | Week Ending 1/11/2020 | Week Ending 1/18/2020 | Week Ending 1/25/2020 | Week Ending 2/1/2020 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sales (less Sales Tax) | | 9,431 | 9,431 | 9,431 | 9,431 | 8,596 | 8,596 | 8,596 | 8,596 | 7,726 | 7,726 | 7,726 | 7,726 | 7,726 |
| Vending Sales (Less Sales Tax) | 67% | 2,500 | 2,500 | 2,500 | 2,500 | 750 | 750 | 750 | 750 | 2,347 | 2,347 | 2,347 | 2,347 | 2,347 |
| **Total Sales** | | 7,993 | 7,993 | 7,993 | 7,993 | 6,262 | 6,262 | 6,262 | 6,262 | 6,749 | 6,749 | 6,749 | 6,749 | 6,749 |
| **Cost of Goods Sold Spend** | | | | | | | | | | | | | | |
| Materials | | 1,599 | 1,599 | 1,599 | 1,599 | 1,252 | 1,252 | 1,252 | 1,252 | 1,350 | 1,350 | 1,350 | 1,350 | 1,350 |
| Square Fees | | 168 | 168 | 168 | 168 | 131 | 131 | 131 | 131 | 142 | 142 | 142 | 142 | 142 |
| Management Pay | | - | 3,600 | - | 3,600 | - | 3,600 | - | 3,600 | - | - | 3,600 | - | 3,600 |
| Front Labor Pay | | - | | | | | | | | | | | | |
| Production Labor | | - | | | | | | | | | | | | |
| Event Labor | | - | 631 | - | 631 | - | 380 | - | 380 | - | - | 506 | - | 506 |
| Other Labor | | - | 1,189 | - | 1,189 | - | 929 | - | 929 | - | - | 983 | - | 983 |
| Commissions | | - | 5,000 | - | 5,000 | - | - | - | - | - | - | - | - | - |
| **Total Cost of Goods Sold Spend** | | 1,767 | 12,187 | 1,767 | 12,187 | 1,384 | 6,293 | 1,384 | 6,293 | 1,492 | 1,492 | 6,581 | 1,492 | 6,581 |
| **Operating Expenses Spend** | | | | | | | | | | | | | | |
| Dues and Subscriptions | | - | - | 204 | 461 | - | - | 204 | 461 | - | - | - | 204 | 461 |
| General and Administrative | | 340 | 340 | 340 | 340 | 340 | 340 | 340 | 340 | 272 | 272 | 272 | 272 | 272 |
| Meals and Entertainment | | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 |
| Unemployment | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Misc Charges (COD, etc) | | | | | | | | | | | | | | |
| Property Taxes | | - | - | - | - | - | - | - | - | - | - | - | - | 13,094 |
| Sales Tax | | | | | | | | | | | | | | |
| Rent | | 13,094 | - | - | - | 13,094 | - | - | - | 13,094 | - | - | - | - |
| Repairs and Maintenance | | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 200 | 200 | 200 | 200 | 200 |
| Territory Travel | | 273 | 273 | 273 | 273 | 273 | 273 | 273 | 273 | 273 | 273 | 273 | 273 | 273 |
| Utilities | | 617 | 552 | 2,455 | 560 | 617 | 552 | 2,455 | 560 | 617 | 552 | 2,455 | - | 560 |
| | 50% | (309) | (276) | (1,228) | (280) | (309) | (276) | (1,228) | (280) | (309) | (276) | (1,228) | - | (280) |
| Vending Fees | | 236 | 236 | 236 | 236 | 104 | 104 | 104 | 104 | 100 | 100 | 100 | 100 | 100 |
| **Total Operating Expenses** | | 14,602 | 1,475 | 2,631 | 1,940 | 14,470 | 1,343 | 2,499 | 1,808 | 14,298 | 1,171 | 2,123 | 1,099 | 14,730 |
| Total Expenses | | 16,368 | 13,662 | 4,397 | 14,127 | 15,853 | 7,636 | 3,882 | 8,101 | 15,789 | 2,663 | 8,703 | 2,591 | 21,311 |
| **Total Cash Available** | | (8,375) | (5,668) | 3,596 | (6,133) | (9,592) | (1,374) | 2,379 | (1,839) | (9,040) | 4,086 | (1,954) | 4,158 | (14,562) |

**Steel City Pops - LKY**
**Cash Projections**
**From November 2019 to September 2020**

| | | Week Ending 11/9/2019 | Week Ending 11/16/2019 | Week Ending 11/23/2019 | Week Ending 11/30/2019 | Week Ending 12/7/2019 | Week Ending 12/14/2019 | Week Ending 12/21/2019 | Week Ending 12/28/2019 | Week Ending 1/4/2020 | Week Ending 1/11/2020 | Week Ending 1/18/2020 | Week Ending 1/25/2020 | Week Ending 2/1/2020 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash Projections | | | | | 22,929 | | | | 24,608 | | | | | 21,635 |
| From November 2019 to September 2020 | | | | | 2,000 | | | | 1,500 | | | | | 3,231 |
| | | | | | | | | | | | | | | |
| **Sales (less Sales Tax)** | | 5,732 | 5,732 | 5,732 | 5,732 | 6,152 | 6,152 | 6,152 | 6,152 | 4,327 | 4,327 | 4,327 | 4,327 | 4,327 |
| **Vending Sales (Less Sales Tax)** | | 500 | 500 | 500 | 500 | 375 | 375 | 375 | 375 | 646 | 646 | 646 | 646 | 646 |
| | 67% | | | | | | | | | | | | | |
| **Total Sales** | | 4,176 | 4,176 | 4,176 | 4,176 | 4,373 | 4,373 | 4,373 | 4,373 | 3,332 | 3,332 | 3,332 | 3,332 | 3,332 |
| | | | | | | | | | | | | | | |
| **Cost of Goods Sold Spend** | | | | | | | | | | | | | | |
| Materials | | 835 | 835 | 835 | 835 | 875 | 875 | 875 | 875 | 666 | 666 | 666 | 666 | 666 |
| Square Fees | | 88 | 88 | 88 | 88 | 92 | 92 | 92 | 92 | 70 | 70 | 70 | 70 | 70 |
| Management Pay | | - | 2,750 | - | 2,750 | - | 2,750 | - | 2,750 | - | - | 2,750 | - | 2,750 |
| Front Labor Pay | | - | | | | | | | | | | | | |
| Production Labor | | - | | | | | | | | | | | | |
| Event Labor | | - | 100 | - | 100 | - | 66 | - | 66 | - | - | 63 | - | 63 |
| Other Labor | | - | 302 | - | 302 | - | 292 | - | 292 | - | - | 334 | - | 334 |
| Commissions | | - | 6,100 | - | 6,100 | - | - | - | - | - | - | - | - | - |
| | | | | | | | | | | | | | | |
| **Total Cost of Goods Sold Spend** | | 923 | 10,175 | 923 | 10,175 | 966 | 4,074 | 966 | 4,074 | 736 | 736 | 3,883 | 736 | 3,883 |
| | | | | | | | | | | | | | | |
| **Operating Expenses Spend** | | | | | | | | | | | | | | |
| Dues and Subscriptions | | 221 | 90 | - | 320 | 221 | 90 | - | 320 | 221 | 90 | - | - | 320 |
| General and Administrative | | 267 | 267 | 267 | 267 | 267 | 267 | 267 | 267 | 250 | 250 | 250 | 250 | 250 |
| Meals and Entertainment | | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 |
| Misc Charges (COD, etc) | | | | | | | | | | | | | | |
| Property Taxes | | - | - | - | - | - | - | - | 493 | - | - | - | - | 4,694 |
| Unemployment | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Occupational Tax | | - | - | 126 | - | - | - | 1,900 | - | - | - | - | 100 | - |
| Withholding Tax | | - | - | 855 | - | - | - | 855 | - | - | - | - | 955 | - |
| Sales Tax | | | | | | | | | | | | | | |
| Rent | | 11,454 | - | - | - | 11,454 | - | - | - | 11,454 | - | - | - | - |
| Repairs and Maintenance | | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 350 | 350 | 350 | 350 | 350 |
| Travel | | 135 | 135 | 135 | 135 | 135 | 135 | 135 | 135 | 135 | 135 | 135 | 135 | 135 |
| Utilities | | 781 | 4,583 | 288 | 1,364 | 781 | 4,583 | 288 | 1,364 | 781 | 4,583 | 288 | 1,214 | 150 |
| | 50% | (391) | (2,292) | (144) | (682) | (391) | (2,292) | (144) | (682) | (391) | (2,292) | (144) | (607) | (75) |
| Vending Fees | | 10 | 10 | 10 | 10 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 |
| **Total Operating Expenses** | | 12,978 | 3,293 | 2,037 | 1,914 | 13,018 | 3,333 | 3,851 | 2,447 | 12,901 | 3,216 | 979 | 2,497 | 5,924 |
| Total Expenses | | 13,900 | 13,468 | 2,960 | 12,089 | 13,984 | 7,408 | 4,817 | 6,521 | 13,637 | 3,953 | 4,862 | 3,233 | 9,807 |
| | | | | | | | | | | | | | | |
| **Total Cash Available** | | (9,725) | (9,293) | 1,216 | (7,913) | (9,611) | (3,035) | (444) | (2,148) | (10,305) | (621) | (1,530) | 99 | (6,475) |