# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| IN RE: | ) | |
|  | ) | Case No. 19-04687-DSC11 |
| STEEL CITY POPS HOLDING, LLC, | ) | |
| *et al.*[1] | ) | Chapter 11 |
|     Debtor. | ) | |

## MOTION FOR RELIEF FROM AUTOMATIC STAY

Petra RMS, LLC, creditor and party in interest ("Petra"), by and through undersigned counsel, hereby moves this Court for entry of an order granting Petra relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) to permit Petra to issue a notice of cancellation of insurance related to the non-payment of prepetition and postpetition amounts owed to Petra related to certain insurance policies, as explained in more detail below. In support of this motion (the "Motion"), Petra shows the Court as follows:

## JURISDICTION

1. The Court has subject matter jurisdiction of this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to § 157(b)(2).

2. The statutory basis for the relief requested herein is § 362(d) of title 11 of the United States Code (the "Bankruptcy Code").

3. Notice of this Motion has been given as required pursuant to Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure.

---

[1] The debtors in these chapter 11 cases are: Steel City Pops Holding, LLC, Case No. 19-04687-DSC11; Steel City Pops B'ham, LLC, Case No. 19-04689-DSC11; Steel City Pops DTX, LLC, Case No. 19-04692-DSC11; Steel City Pops FWTX, LLC, Case No. 19-04695-DSC11; and Steel City Pops LKY, LLC, Case No. 19-04697-DSC11 (collectively, the "Debtors")

05200086.2

## BACKGROUND

*Steel City Pops' Bankruptcy*

4. On November 14, 2019 (the "Petition Date"), the Debtors filed their voluntary petition under Chapter 11 of the Bankruptcy Code.

5. On November 25, 2019, the Court entered its *Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* (Doc. 28), consolidating the Debtors' bankruptcy proceedings into the above-captioned proceeding.

6. On December 3, 2019, the Court entered its *Chapter 11 Operating Order* (Doc. 42) (the "Chapter 11 Operating Order"). Among other requirements, the Chapter 11 Operating Order requires the Debtors to maintain insurance for "all of its properties for loss caused by fire, theft, liability, collision and casualty, and, if required, workmen's compensation." (*See* Doc. 42, § H(1).)

7. On November 21, 2019, the Debtors filed their *Motion for Entry of Interim and Final Orders (I) Granting Nunc Pro Tunc Authority to the Debtors to (A) Pay Prepetition Wages and Salaries, and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief* (Doc. 19) (the "Employee Benefits Motion"). The Employee Benefits Motion requested, among other things, authority for the Debtors to continue their health insurance programs and workers' compensation insurance program with Travelers Insurance. (*See* Doc. 19.) The Employee Benefits Motion appears to address in part the workers' compensation insurance policy provided pursuant to Petra's insurance brokerage services.

8. On January 6, 2020, the Court entered its *Final Order Granting in Part and Denying in Parts the Debtors' Motion for Entry of Interim and Final Orders (I) Nunc Pro Tunc Authority to the Debtors' to (A) Pay Prepetition Wages and Salaries, and (B) Continue*

*Employee Benefits Programs, and (II) Granting Related Relief* (Doc. 86) (the "Employee Benefits Order") approving (with the exception of certain relief related to certain prepetition wages and salaries) the Employee Benefits Motion.

9. On December 9, 2019, the Debtors filed their *Second Motion for Interim and Final Orders Authorizing the Debtors to (I) Use Cash Collateral, (II) Obtain Post-Petition Financing and (III) Scheduling Final Hearing* (Doc. 52) (the "DIP Motion") requesting authority for the Debtors to obtain certain postpetition financing.

10. On January 6, 2020, the Court entered its *Second Final DIP Order Granting the Debtors' Second Motion for Interim and Final Orders Authorizing the Debtors to (I) Use Cash Collateral and (II) Obtain Post-Petition Financing* (Doc. 87) (the "DIP Financing Order") approving the relief requested in the DIP Motion. Pursuant to the DIP Financing Order, the Debtors are authorized to remit payment on the Insurance Policies (as defined below) to Petra. Attached to the DIP Financing Order is a budget (the "Budget") prepared by the Debtors, which sets forth certain obligations and liabilities to be paid pursuant to the DIP Financing. (*See* Doc. 87, Ex. A.) Among the obligations and liabilities set forth in the Budget, the Court approved monthly payments of $10,800.00 by the Debtors to satisfy certain insurance obligations, as set forth in more detail below. *Id*.

*Petra's Insurance Brokerage Services*

11. As explained in the Affidavit of Tyler Higginbotham, Chief Financial Officer of Petra, Petra is a risk management and insurance firm that, among other things, provides insurance brokerage services to companies. (*See* Ex. A, ¶ 2.) A copy of the Affidavit of Tyler Higginbotham is attached hereto as **Exhibit "A"**.

12. In the ordinary course of providing its insurance brokerage services, Petra routinely enters into agency agreements with insurers, which authorize Petra to solicit, propose, and execute insurance contracts with insureds on behalf of the insurer. *Id.* at ¶ 3.

13. While Petra operates as a separate entity from the insurance companies it provides brokerage services for, Petra is inextricably intertwined with these insurance companies under agency agreements such that insureds treat Petra the same as they would an insurance company. For example, Petra often acts as a claims adjuster for the insurance companies it represents, which allows Petra to adjust small claims and write and sign checks on behalf of the insurance company. *Id.* Additionally, Petra is empowered to sign and deliver claim checks to insureds on behalf of insurance companies in many instances. *Id.* Further, Petra is often appointed surety for insurance companies and, as part of that role, is granted power of attorney to execute documents on behalf of the insurance companies it represents. *Id.* Finally, Petra is often granted authority to bind insurance companies to policies with insureds without the necessity of going through a formal approval process. *Id.* As such, Petra is so closely related to the insurance companies it represents in many instances that insureds often view Petra the same as the insurer.

14. In August 2017, Petra entered into an agency agreement (the "<u>Agency Agreement</u>") with Berkley Southeast Insurance Group ("<u>Berkley</u>"). *Id.* at ¶ 4. The Agency Agreement contains many attributes that, as explained above, allow Petra to act as the agent for the insurer and that would cause insureds to treat Petra as the insurer for payment purposes. Specifically, the Agency Agreement authorizes Petra to solicit, receive, transmit, bind, execute, and propose insurance contracts to potential insureds on Berkley's behalf. *Id.* Petra is also authorized to cancel and issue cancellation notices to policyholders. *Id.* The Agency Agreement obligates Berkley to pay commissions to Petra for its services. *Id.*

15. Under the Agency Agreement, Petra and Berkley may maintain one of two separate premium billing policies with insureds: direct billing or agency billing. *Id.* at ¶ 5. Under the direct billing method, insureds pay premiums directly to Berkley for the insurance policies provided on a monthly basis. *Id.* Under the agency billing method, Petra advances premium payments on behalf of the insured to Berkley and invoices the insured thereafter for payments made. *Id.* The agency billing method is ordinary in the industry and allows Petra and Berkley to provide insurance policies to cash-strapped insureds who are reliant on month-to-month cash flow to make payments. *Id.*

16. Under the Agency Agreement, if an insured fails to remit payment to Petra, Petra has the authority to issue a notice of cancellation of policy to Berkley. *Id.* at ¶ 6. Once the notice of cancellation of policy is received, Berkley will cancel all insurance policies it provides to the insured and for which premiums have not been paid. *Id.*

17. Pursuant to the Agency Agreement, Petra solicited and executed certain insurance policies (the "Insurance Policies") with the Debtors. True and correct copies of the declarations pages for the Insurance Policies are attached hereto as **Exhibit "B"**. The Insurance Policies provide general liability, property, automobile, workers compensation, flood, and umbrella coverage. (*See* Ex. B.) Petra, Berkley, and the Debtors agreed that the agency billing method would be used for the Insurance Policies. (*See* Ex. A., ¶ 7.)

18. As part of the agency billing method, Petra advanced monthly premium payments on behalf of the Debtors to Berkley. *Id.* at ¶ 8. Petra mailed invoices to the Debtors on a monthly basis evidencing the premium payments made and seeking compensation therefor. *Id.*

19. In May 2019, the Debtors began failing to remit certain monthly payments to Petra. *Id.* at ¶ 9. Additionally, the Debtors have failed to remit one monthly $10,800 payment it

05200086.2    5

Case 19-04687-DSC11    Doc 93    Filed 01/08/20    Entered 01/08/20 16:46:49    Desc Main
Document      Page 5 of 16

is obligated to make under the Budget to Petra for certain postpetition insurance premiums remitted by Petra to Berkley. *Id*. In total, the Debtors have failed to make payment in the amount of $63,801.00 for premiums owed. *Id*.

## ARGUMENT

20. By this Motion, Petra seeks to modify and terminate the automatic stay to permit Petra to issue a notice of cancellation of the Insurance Policies.

21. Pursuant to § 362(d) of the Bankruptcy Code, a court may grant relief from the automatic stay "for cause[.]" 11 U.S.C. § 362(d)(1).

22. The Insurance Policies are subject to the automatic stay because they are considered property of the Debtors' estate. *Matter of Edgeworth*, 993 F.2d 51, 55 (5th Cir. 1993) ("[C]ourts are generally in agreement that an insurance policy will be considered property of the estate."); *In re Stevens*, 130 F.3d 1027, 1029 (11th Cir. 1997) (acknowledging insurance policies constitute property of debtor's bankruptcy estate). Furthermore, courts have held that the automatic stay must be lifted before an insurance policy can be cancelled. *In re Minoco Grp. of Cos., Ltd.*, 799 F.2d 517 (9th Cir. 1986) ("[T]he right to cancel an insurance policy issued to the debtor has uniformly been held to be stayed under [§] 362(a)(3) [of the Bankruptcy Code]."); *Scrima v. John Devries Agency, Inc.*, 103 B.R. 128, 132 (W.D. Mich. 1989) ("§ 362(a)(3) stays postpetition cancellation of insurance policies that are property of the estate.").

23. The automatic stay should be lifted for cause to allow Petra to issue a notice of cancellation of the Insurance Policies to Berkley due to the postpetition and prepetition payment defaults that have occurred. *See In re Double Eagle Const., Inc.*, 188 B.R. 406 (Bankr. W.D. Mo. 1995) (court lifting stay to allow insurer to party to cancel insurance policy); *In re Berman*

*Enterprises, Inc.*, 168 B.R. 18, 21 (Bankr. E.D.N.Y. 1992) (automatic stay applies to any attempted cancellation of debtor's insurance policy).

24. First, the Debtors have failed to remit certain monthly postpetition payments in the ordinary course of business, as required by the Court's Chapter 11 Operating Order and as authorized by the DIP Financing Order. Petra has notified the Bankruptcy Administrator of the Debtors' failure to make postpetition premium payments to Petra pursuant to the Chapter 11 Operating Order.

25. Second, the Debtors' failure to remit these premiums constitutes a default under the Insurance Policies issued by Petra to the Debtors.

26. Failure to make postpetition payments to creditors constitutes grounds to lift the automatic stay to allow creditors to pursue their available remedies. *In re Neals*, 459 B.R. 612 (Bankr. D.S.C. 2011) (cause exists to lift automatic stay where debtor fails to make postpetition payments to creditor); *In re Uvaydov*, 354 B.R. 620, 623-24 (Bankr. E.D.N.Y. 2006) ("[D]ebtor's failure to make post-petition mortgage payments in bankruptcy rehabilitation proceedings can constitute cause for relief under § 362(d)(1).").

27. Based on these defaults, the Court should lift the automatic stay to allow Petra to issue a notice of cancellation of the Insurance Policies.

28. Additionally, the Debtors' failure to remit prepetition premium payments for the Debtors' critical Insurance Policies supports lifting the automatic stay.

29. Petra issued invoices to the Debtors on a monthly basis for premiums paid by Petra to Berkley. To date, Petra has not been paid by the Debtors for such payments beginning in May 2019 through the Petition Date.

05200086.2

7

Case 19-04687-DSC11   Doc 93   Filed 01/08/20   Entered 01/08/20 16:46:49   Desc Main
Document    Page 7 of 16

30. Relief to make payments on all prepetition amounts owed to allow a debtor to continue its insurance programs in the ordinary course of business in a chapter 11 proceeding is routinely granted by bankruptcy courts due to the critical nature of insurance coverage for property of the estate. *See In re Piney Woods Res., Inc.*, Case No. 19-01390, Doc. 42 (Bankr. N.D. Ala. Apr. 5, 2019) (DSC); *In re SouthFresh Aquaculture, LLC*, Case No. 19-70152, Doc. 33 (Bankr. N.D. Ala. Feb. 1, 2019) (JHH). Petra anticipated that the Debtors would pursue such relief but unfortunately the Debtors have not yet made such request.

31. If the prepetition defaults relating to the critical Insurance Policies are not cured, then Petra should not be forced to continue advancing premiums therefor on behalf of the Debtors, and stay relief should be granted to permit Petra to issue a notice of cancellation.

**WHEREFORE**, based on the foregoing, Petra respectfully requests the Court enter an order, substantially in the form attached hereto as **Exhibit "B"**, to modify and terminate the automatic stay pursuant to 11 U.S.C. § 362(d)(1) to allow Petra to issue a notice of cancellation of the Insurance Policies.

Respectfully submitted this the 8th day of January, 2020.

          */s/ Wes Bulgarella*
          Ryan D. Thompson
          Wes Bulgarella

          *Attorneys for Petra RMS, LLC*

OF COUNSEL:
**MAYNARD, COOPER & GALE, P.C.**
1901 6th Avenue North
Suite 2400
Birmingham, AL 35203
T: (205) 254-1000
rthompson@maynardcooper.com
wbulgarella@maynardcooper.com

# Exhibit "A"

## Affidavit of Tyler Higginbotham

05200086.2

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

|   |   |
|---|---|
| IN RE: ) | |
| ) | Case No. 19-04687-DSC11 |
| STEEL CITY POPS HOLDING, LLC, ) | |
| *et al.*[2] ) | Chapter 11 |
| Debtor. ) | |

## AFFIDAVIT OF TYLER HIGGINBOTHAM

I, Tyler Higginbotham, Chief Financial Officer of Petra RMS, LLC ("Petra"), the above-captioned debtor-in-possession, hereby declare under penalty of perjury:

1. I am the Chief Financial Officer of Petra, an Alabama limited liability company. In my capacity as Chief Financial Officer, I am familiar with Petra's day-to-day operations, business and financial affairs, and books and records.

2. Petra is a risk management and insurance firm that, among other things, provides insurance brokerage services to companies.

3. In the ordinary course of providing its insurance brokerage services, Petra routinely enters into agency agreements with insurers, which authorize Petra to solicit, propose, and execute insurance contracts with insureds on behalf of the insurer. Petra often acts as a claims adjuster for the insurance companies it represents, which allows Petra to adjust small claims and write and sign checks on behalf of the insurance company. Additionally, Petra is empowered to sign and deliver claim checks to insureds on behalf of insurance companies in many instances. Further, Petra is often appointed surety for insurance companies and, as part of that role, is granted power of attorney to execute documents on behalf of the insurance

---

[2] The debtors in these chapter 11 cases are: Steel City Pops Holding, LLC, Case No. 19-04687-DSC11; Steel City Pops B'ham, LLC, Case No. 19-04689-DSC11; Steel City Pops DTX, LLC, Case No. 19-04692-DSC11; Steel City Pops FWTX, LLC, Case No. 19-04695-DSC11; and Steel City Pops LKY, LLC, Case No. 19-04697-DSC11 (collectively, the "Debtors")

05200086.2

companies it represents. Finally, Petra is often granted authority to bind insurance companies to policies with insureds without the necessity of going through a formal approval process.

4. In August 2017, Petra entered into an agency agreement (the "Agency Agreement") with Berkley Southeast Insurance Group ("Berkley"). The Agency Agreement authorizes Petra to solicit, receive, transmit, bind, execute, and propose insurance contracts to potential insureds on Berkley's behalf. Petra is also authorized to cancel and issue cancellation notices to policyholders. The Agency Agreement obligates Berkley to pay commissions to Petra for its services.

5. Under the Agency Agreement, Petra and Berkley may maintain one of two separate premium billing policies with insureds: direct billing or agency billing. Under the direct billing method, insureds pay premiums directly to Berkley for the insurance policies provided on a monthly basis. Under the agency billing method, Petra advances premium payments on behalf of the insured to Berkley and invoices the insured thereafter for payments made. The agency billing method is ordinary in the industry and allows Petra and Berkley to provide insurance policies to cash-strapped insureds who are reliant on month-to-month cash flow to make payments.

6. Under the Agency Agreement, if an insured fails to remit payment to Petra, Petra has the authority to issue a notice of cancellation of policy to Berkley. Once the notice of cancellation of policy is received, Berkley will cancel all insurance policies it provides to the insured and for which premiums have not been paid.

7. Pursuant to the Agency Agreement, Petra solicited and executed certain insurance policies (the "Insurance Policies") with the Debtors. The Insurance Policies provide general liability, property, automobile, workers compensation, flood, and umbrella coverage. Petra,

05200086.2

Case 19-04687-DSC11    Doc 93    Filed 01/08/20    Entered 01/08/20 16:46:49    Desc Main
Document    Page 11 of 16

Berkley, and the Debtors agreed that the agency billing method would be used for the Insurance Policies.

8. As part of the agency billing method, Petra advanced monthly premium payments on behalf of the Debtors to Berkley. Petra mailed invoices to the Debtors on a monthly basis evidencing the premium payments made and seeking compensation therefor.

9. In May 2019, the Debtors began failing to remit certain monthly payments to Petra. Additionally, the Debtors have failed to remit one monthly $10,800 payment it is obligated to make under the Budget to Petra for certain postpetition insurance premiums remitted by Petra to Berkley. In total, the Debtors have failed to make payment in the amount of $63,801.00 for premiums owed.

Further, affiant sayeth not.

[*Remainder of page intentionally left blank*]

05200086.2

_____
Tyler Higginbotham

05200086.2

# Exhibit "B"

# Proposed Order

05200086.2

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| IN RE: | ) ) ) | Case No. 19-04687-DSC11 |
| STEEL CITY POPS HOLDING, LLC, *et al.*[1] | ) ) ) | Chapter 11 |
| Debtor. | ) |  |

## ORDER GRANTING MOTION FOR RELIEF FROM AUTOMATIC STAY

This matter having come before the Court on Petra's[2] *Motion for Relief from the Automatic Stay* (Doc. __) (the "Motion"); and sufficient and adequate notice of the Motion having been given, with no objections filed; and after due deliberation and good cause therefor,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1. The Motion is GRANTED.

2. The Court hereby modifies and terminates the automatic stay to allow Petra to issue a notice of Cancellation on the Insurance Policies due to the Debtors' failure to remit monthly premium payments to Petra.

3. The terms and provisions of this Order shall be immediately enforceable upon entry of this Order.

DONE this the _____ day of _____, 2020.

_____
UNITED STATES BANKRUPTCY JUDGE

---

[1] The debtors in these chapter 11 cases are: Steel City Pops Holding, LLC, Case No. 19-04687-DSC11; Steel City Pops B'ham, LLC, Case No. 19-04689-DSC11; Steel City Pops DTX, LLC, Case No. 19-04692-DSC11; Steel City Pops FWTX, LLC, Case No. 19-04695-DSC11; and Steel City Pops LKY, LLC, Case No. 19-04697-DSC11 (collectively, the "Debtors").

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion (as hereinafter defined).

05200086.2

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 19-04687-DSC11 |
| STEEL CITY POPS HOLDING, LLC, ) | |
| *et al.* ) | Chapter 11 |
| Debtor. ) | |

## CERTIFICATE OF SERVICE

Petra RMS, LLC, creditor and party in interest, by and though undersigned counsel, hereby certifies to the Court that on January 8, 2020 the *Motion for Relief from Automatic Stay* was served on all parties receiving notice via the Court's CM/ECF system.

Respectfully submitted this the 8th day of January, 2020.

*/s/ Wes Bulgarella*
OF COUNSEL

05200086.2