UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| In re: | Chapter 11 |
|---|---|
| STEEL CITY POPS HOLDING, LLC, *et al.*[1], | Case No. 19-04687-11 |
| Debtors. | (Jointly Administered) |

**LIMITED OBJECTION OF FW WATERSIDE COMMERCIAL LLC TO DEBTORS' DEBTORS MOTION FOR AN ORDER AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN LEASES AND EXECUTORY CONTRACTS**

FW Waterside Commercial LLC (the "Landlord") hereby files this limited objection to the Debtors Motion For An Order Authorizing the Assumption and Assignment of Certain Leases and Executory Contracts (Dkt. No. 150, the "Assumption and Assignment Motion")[2], and respectfully represents as follows:

**I.    BACKGROUND FACTS**

1. Steel City Pops Holding, LLC, and its affiliated co-debtors (collectively, the "Debtors"), filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code on November 14, 2019. Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to 11 U.S.C. § 1107(a) and 1108.[3]

2. Debtors lease retail space (the "Premises") from Landlord pursuant to an unexpired lease of nonresidential real property (the "Lease") at the location (the "Center") identified on

---

[1] The Debtors in these in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Steel City Pops Holding, LLC (7080) and its Debtor affiliates Steel City Pops B'ham, LLC (4235); Steel City Pops DTX, LLC (2677); Steel City Pops FWTX, LLC (1016); and Steel City Pops, LKY, LLC (8898). The Debtors' service address is: 2821 Central Avenue, Birmingham, Alabama 35209. The Debtors have filed a motion for joint administration with the Court which has been granted.

[2] Terms not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion, as defined below, and accompanying documents.

[3] Unless otherwise specified, all statutory references to "Section" are to 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").

1

42963526 v1

Schedule A hereto. The Lease is a lease of "real property in a shopping center" as that term is used in Section 365(b)(3). See In re Joshua Slocum, Ltd., 922 F.2d 1081, 1086-87 (3rd Cir. 1990).

3. On January 6, 2020, Debtors filed a Motion For An Order (A) Authorizing Procedure for the Sale of Substantially All Assets of the Debtors Pursuant to 11 U.S.C. § 363; (B) Authorizing the Procedure for Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Pursuant to 11 U.S.C. § 365; and (C) For Related Relief (the "Sale Motion") seeking approval of procedures for the sale of substantially all of their assets and for assumption and assignment of unexpired leases to a successful bidder [Dkt. No. 89]. On January 21, 2020, Landlord filed a limited objection and reservation of rights to reserve its rights to object based upon the Debtors intent to file a separate motion to assume and assign leases pursuant to the procedures established in the Sale Motion [Dkt. No. 116].

4. Following the hearing on the Sale Motion, the Court entered an Order approving the Sale Motion (the "Order"), which set forth deadlines for the Debtors to provide a cure schedule to landlords, including the amount of the proposed cure, adequate assurance of future performance information with respect to any proposed assignee's ability to perform under the Debtors' leases as required by Section 365(b), and the deadline for Debtors to file motions to assume and assign, among others. The deadline to object to cure and assumption and assignment was set for February 11, 2020, by noon CT. The deadline for the Debtors to file motions to assume was set for February 7, 2020.

5. Pursuant to the Order, the Debtors provided Landlord, by e-mail, with its proposed cure amount, and subsequently provided Landlord with limited adequate assurance information on the proposed buyer and assignee. On February 7, 2020, the Debtors filed the Assumption and Assignment Motion [Dkt. No. 150].

6. Landlord generally does not oppose the assumption and assignment of its Lease to a financially capable operator that will continue to run the same business in accordance with the terms of the Lease, and consistent therewith, Landlord has been in discussions with the successful bidder's counsel to resolve issues relating to the outstanding cure amount and issues relating to the

adequate assurance objections raised herein. The cure amount provided in the Assumption and Assignment Motion does not reflect all past due rents, charges, and fees under terms of the Lease, and the Debtors have not demonstrated adequate assurance of future performance as contemplated by the Bankruptcy Code. Based on the shortened timeframe that the Debtors request to hear matters related to the Assumption and Assignment Motion [Dkt. No. 151], Landlord is not sure whether it will be able to consensually resolve these matters entirely before the sale hearing (the "Sale Hearing"). To the extent the parties have not fully resolved all such issues, Landlord reserves the right to request that the Sale Hearing be treated as a status conference as to the assumption and assignment of the Lease, including the cure and adequate assurance objections raised herein, while the parties continue working to resolve any remaining issues.

## II. LIMITED OBJECTIONS AND RESERVATION OF RIGHTS

### A. The Debtors' Cure Fails to Provide For Payment of All Lease Obligations

7. The Landlord's cure, as compared to the Debtors' cure, is summarized below. Those charges comprising the Landlord's cure are more fully detailed in Exhibit 1, which is attached and fully incorporated here by this reference.

| Landlord | Center | Debtor's Cure | Landlord's Cure[4] | Cure Exhibit |
|---|---|---|---|---|
| FW Waterside Commercial LLC | Waterside Shopping Center | $3,490.85 | **$14,333.11** | 1 |

8. As mentioned above, Landlord has been in contact with counsel to Redmont Private Debt Fund III, L.P. (the "Successful Bidder"), to try to resolve the cure amounts and other issues prior to the Sale Hearing. Landlord is confident that the parties will resolve any remaining cure

---

[4] The Landlord's Cure includes January and February rent and charges. Debtors have informed Landlord that those payments were made, but Landlord is still confirming that those payments have cleared. To the extent that those payments cleared, Landlord will modify its cure amount accordingly. Moreover, Landlord's Cure does not include charges that are billed or come due after the filing of this Objection or charges that are billed directly to the Debtors, including in some cases, real estate taxes. To the extent Landlord is later billed for any amount due to the Debtors' failure to pay, Landlord reserves the right to amend the Objection to include such amounts. The Debtor must timely pay all rent and other lease charges as they come due under the Lease, and the Landlord reserves the right to payment (and to amend this Objection to the extent necessary) for any amounts that come due under the Lease through the date of any cure payment.

3

dispute, and it will continue to work with the Debtors and the Successful Bidder to resolve these amounts. To the extent the cure issues are not fully resolved, the dollar amounts are fairly small. Rather than having an evidentiary hearing on a matter that will likely be resolved by the parties in relatively short order, Landlord requests that any remaining cure dispute be continued to a later date to allow the parties to finalize the total outstanding cure balance without further cost or imposition on the Court.

9. In addition to the current outstanding rent and other monthly charges due under the Lease, in determining what must be paid as cure pursuant to Section 365(b), the charges referenced below must also be taken into consideration and paid by the Debtors, either as cure or when properly billed under the Lease.

### i. Year-end Adjustments and Reconciliations

10. In addition to rent and related monthly charges, attorneys' fees, costs and interest, some charges for which the Debtors bear responsibility under the Lease have not yet been reconciled and/or adjusted from pre-petition (or even post-petition) periods. By way of example, the Debtors occupy retail space at the Center pursuant to a triple-net lease, where they typically pay rent and related lease charges in advance for each month. The Debtors pay fixed minimum rent, along with a pro-rata share of expenses such as real property taxes, insurance, CAM fees, annual percentage rent, and the like. Certain charges, such as CAM and property taxes are estimated prospectively, billed to and paid by the tenant during the year, and then reconciled after year-end. The reconciliation compares the amounts estimated and paid against actual charges incurred at the Center. To the extent the estimated payments exceed actual charges, the result is a credit to the tenant. To the extent the estimated payments do not cover actual charges incurred under the Lease, the result is an additional amount (or debit) for which the tenant is liable. In some instances, year-end reconciliations and adjustments for previous years for the Premise may not yet be complete (*i.e.*, year-end reconciliations and adjustments that accrued through 2019 may not yet have been billed at certain locations, and such charges that are accruing for 2020 will not be billed until 2021). In other instances, certain charges may be paid in arrears, and cannot be calculated

(in some cases) until a year or more after year-end. Since these accrued, but unbilled, charges are not yet due under the Lease, they do not create a current default that gives rise to a requirement to cure by the Debtors at this time.

11. Nevertheless, the Debtors remain responsible for all accrued or accruing charges under the Lease, and must pay such charges when they come due under the Lease. The Debtors (or any successor) assume the Lease subject to its terms, and must assume all obligations owing under the Lease, including obligations that have accrued but may not yet have been billed under the Lease. Any final assumption or confirmation order should clearly state that the Debtors will assume these lease obligations and pay them when due, regardless of whether they relate to the period prior to, or after, the assumption of the Lease. In addition, any provision in a final order that purports to release the Debtors of further liability based upon a payment of cure amounts, must specify that such release does not apply to obligations to pay accrued or accruing, but unbilled, charges that come due under the Lease.

12. In addition, the Lease requires the Debtors to indemnify and hold the Landlord harmless with respect to any existing claims which may not become known until after the assumption of the Lease, examples of which may include such claims as personal injuries at the Premises and damage to the Premises or Center by the Debtors or their agents. Any assumption of the Lease must be subject to the terms of the Lease, including the continuation of all indemnification obligations, regardless of when they arose.[5] In the alternative, the Debtors must provide (by insurance or otherwise) that they can satisfy the indemnification obligations under the Lease for any claims that relate to the period prior to assumption of the Lease. Nothing in any assumption or confirmation order should preclude the Landlord from pursuing the Debtors, their insurance, or any other party that may be liable under the Lease, and the Landlord requests that any such order specifically preserve its right to pursue such rights irrespective of any resolution of cure amounts herein.

---

[5] Any ability to assume the Lease is subject to the protections provided by Section 365(b) and (f). Therefore, any assumption must be in accordance with all provisions of the Lease.

### ii. Attorneys' Fees, Costs, and Interest

13. Section 25(d) of the Lease requires the Debtor to pay attorneys' fees upon cure of the Debtor's defaults (as part of the Landlord's remedies). Landlord, thus, is entitled to attorneys' fees as part of Debtors' cure.

14. The Debtors are obligated to cure all defaults under the Lease, and compensate the Landlord for the actual pecuniary losses as a result of defaults under the Lease. *See* 11 U.S.C. § 365(b)(1)(A) and (B). The principle is well-recognized. In re LCO Enterprises, 12 F.3d 938, 941 (9th Cir. 1993); Elkton Associates v. Shelco Inc. (Matter of Shelco), 107 B.R. 483, 487 (Bankr. D. Del. 1989) (debtors allowed to assume lease provided it cured *all pre-petition defaults*). The Debtors' cure numbers do not include amounts for estimated attorneys' fees, and the total cure for the Lease should include attorneys' fees incurred by Landlord in enforcing its rights under the Lease, which must be paid as part of the cure and any assumption of the Lease. Presently, Landlord estimates attorneys' fees incurred through the preparation of this Objection to be approximately **$3,500.00.**

15. The Debtors take the Lease *cum onere* – subject to existing burdens. The Debtors cannot assume the favorable portions, and reject the unfavorable provisions, of the Lease. In re Washington Capital Aviation & Leasing, 156 B.R. 167,172 (Banks. E.D. Va. 1993). If forced to continue in the performance of the Lease, the Landlord is entitled to the full benefit of the bargain under the Lease with the Debtors. *See* Matter of Superior Toy and Mfg. Co., Inc., 78 F.3d 1169 (7th Cir. 1996). The "full benefit of the bargain" principle has been held to require payment of interest. "The cure of a default under an unexpired lease pursuant to 11 U.S.C. § 365 is more akin to a condition precedent to the assumption of a contract obligation than it is to a claim in bankruptcy. One of the purposes of Section 365 is to permit debtors to continue in a beneficial contract; provided, however, that the other party to the contract is made whole at the time of the debtor's assumption of the contract." In re Entertainment, Inc., 223 B.R. 141, 151 (Bankr. N.D. Ill. 1998) (citation omitted; bankruptcy court allowed interest at 18%). Interest on pre-petition lease charges continues to run from the filing of the Debtors' petition and must be paid as a

6

42963526 v1

Case 19-04687-DSC11    Doc 158    Filed 02/11/20    Entered 02/11/20 09:58:53    Desc Main Document    Page 6 of 16

condition of the assumption of the Lease. *See* <u>In re Skylark Travel, Inc.</u>, 120 B.R. 352055 (Bankr. S.D.N.Y. 1990). Interest calculations are therefore not cut short by the automatic stay, and payment of such interest is required to fully compensate Landlord for the Debtors' default under the Lease, and thus to properly assume the Lease. Finally, post-petition interest is allowable where such interest is provided for under the terms of the Lease. <u>Cukierman v. Uecker (In re Cukierman)</u>, 265 F.3d 846, 853 (9th Cir. 2001).

16. Attorneys' fees and costs incurred in enforcement of the covenants, obligations, and conditions of a lease are also proper components of a cure claim, and the Debtors must satisfy these lease charges as part of the assumption or assumption and assignment of the Lease. <u>Entertainment, Inc.</u>, 223 B.R. at 152 (citation omitted). There is no logical distinction for purposes of Section 365 between attorneys' fees incurred in connection with pre-petition defaults and fees incurred with post-petition defaults. <u>Id</u>. 154. The fact that a landlord uses bankruptcy procedures to enforce a lease should not preclude recovery of attorneys' fees and costs for such enforcement activity (particularly where the Bankruptcy Court is the exclusive forum where the landlord can obtain any relief, being foreclosed from state court relief by the automatic stay). *Id.*, *see also*, <u>In re Crown Books Corporation</u>, 269 B.R. 12 (Bankr. D. Del. 2001) (Landlords' fees and costs are recoverable as a component of cure under 11 U.S.C. § 365(b)(1)); <u>Urban Retail Properties v. Loews Cineplex Entertainment Corporation, et al.</u>, 2002 WL 5355479 (S.D.N.Y. Apr. 9, 2002) (where lease "provides for recovery of attorneys' fees and interest, their receipt deserves the same priority under Section 365(d)(3) as any of the debtors' other obligations that arise postpetition ... ."); <u>Three Sisters Partners, L.L.C. v. Harden (In re Shangra-La, Incorporated)</u>, 167 F.3d 843, 850 (4th Cir. 1999). The Supreme Court has upheld the enforceability of such attorneys' fees clauses, ruling that pre-petition attorneys' fee clauses were enforceable with respect to issues peculiar to bankruptcy law. <u>Travelers Casualty & Surety Co. Of America v. Pacific Gas & Electric</u>, 127 S. Ct. 1199, 1206 (2007).

    **iii.**     **The Cure Amounts Serve Only As An Estimate**

7

42963526 v1

Case 19-04687-DSC11    Doc 158    Filed 02/11/20    Entered 02/11/20 09:58:53    Desc Main Document    Page 7 of 16

17. Landlord can only provide the information presently available regarding amounts owing by the Debtors, while reserving its right to amend the Objection as necessary to include any additional or unknown charges that arise, including but not limited to subsequent rent defaults, attorneys' fees, costs, interest, and year-end adjustments and reconciliations. There is no basis to impose upon the Landlord the equivalent of an administrative bar date, limiting their recourse to recover charges to which they are entitled under the Lease.

### iv. The Debtors Must Pay Undisputed Cure Amounts Immediately

18. Section 365(b)(1)(A) requires that the Debtors promptly cure outstanding balances due under the Lease upon assumption. To the extent there is a dispute over the total cure obligation for the Lease, all undisputed cure amounts should be paid immediately upon the assumption of the Lease. The Debtors should escrow disputed amounts, and the Court should set a status conference within thirty (30) days of the assumption of the Lease to deal with any disputes that remain unresolved after such period.

### B. The Debtors Must Demonstrate Adequate Assurance of Future Performance to Assume and Assign the Lease

19. The Debtors may not assume and assign the Lease unless they demonstrate adequate assurance of future performance. 11 U.S.C. § 365(b)(1)(C); see also 11 U.S.C. § 365(f)(2). The provision of adequate assurance of future performance is an affirmative duty of the Debtors, and the Debtors bear the ultimate burden of persuasion as to issues under Section 365. See In re Rachels Industries, Inc., 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); see also Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1309 (5th Cir. 1985). The obligation to comply with Section 365(b) and Section 365(f) is unaffected by the assumption and assignment process taking place through a sale under Section 363. Courts require a specific factual showing through competent evidence to determine whether adequate assurance of future performance has been provided. See, e.g., Matter of Haute Cuisine, Inc., 58 B.R. 390 (Bankr. M.D. Fla. 1986) (even though experts presented cash flow projections, the court found that insufficient documentary evidence had been presented). To determine whether a party provides adequate assurance of future

performance under Section 365(b), courts have looked to sufficient economic backing, economic conditions, certificates, credit reports, escrow deposits or other similar forms of security or guarantees. In re Belize Airways, 5 B.R. 152 (Bankr. S.D. Fla. 1980); In re Lafayette Radio Elecs. Corp., 9 B.R. 993 (Bankr. E.D.N.Y. 1981). Courts also look to the operating experience of the proposed assignee. In re Bygaph, Inc., 56 B.R. 596 (Bankr. S.D.N.Y. 1986).

20. In this case, the Lease is a shopping center lease and, as such, the Bankruptcy Code requires more than the basic adequate assurance of future performance of the Lease under Section 365(b)(1)(C). In re Sun TV and Appliances, Inc., 234 B.R. 356, 359 (Bankr. D. Del. 1999). In order to assume and assign shopping center leases, the Debtors must satisfy the heightened requirements set forth in 11 U.S.C. § 365(b)(3)(A) - (D). See Joshua Slocum, 922 F.2d at 1086; see also L.R.S.C. Co. v. Rickel Home Centers, Inc. (In re Rickel Home Centers, Inc.), 209 F.3d 291, 299 (3d Cir. 2000). The heightened adequate assurance requirements that the Debtors must satisfy under Section 365(b)(3) include the following:

- the source of rent and that the financial condition and operating performance of the proposed assignee and its guarantors, if any, must be similar to the financial condition and operating performance of the debtor and its guarantor(s), if any, as of the time the debtor became the lessee. See 11 U.S.C. § 365(b)(3)(A);
- that any percentage rent due under the lease will not decline substantially. See 11 U.S.C. § 365(b)(3)(B);
- that assumption and assignment of the lease is subject to all provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach of any such provision in any other lease, financing agreement, or master agreement relating to such shopping center. See 11 U.S.C. § 365(b)(3)(C); and
- that assumption and assignment of the lease will not disrupt the tenant mix or balance in the shopping center. See 11 U.S.C. § 365(b)(3)(D).

21. This heightened adequate assurance of future performance determination must be satisfied in connection with an assumption and assignment under Section 365(f)(2)(B). Sun TV and Appliances, Inc., 234 B.R. at 370. In connection with the heightened adequate assurance requirement for shopping center leases, courts also require a specific factual showing through competent evidence to determine whether the Debtors have provided adequate assurance of future performance. Matter of Haute Cuisine, Inc., 58 B.R. at 394.

22. The adequate assurance information provided does not demonstrate adequate assurance of future performance. According to the information provided, the proposed assignee, SCP Coldworks, LLC ("Proposed Assignee"), is a newly formed company without any operational history, financial statements, or information regarding its capitalization (other than stating that an unknown amount of funds from the business operations, along with acquisition of the Debtors' cash holdings in the amount of approximately $500,000, will capitalize the company). Its parent, the Successful Bidder, is a private equity firm based in Birmingham, Alabama, which claims to have experience buying small businesses in the Central Southeast/Southwest, but there is no indication that the Successful Bidder has experience owning or operating retail companies or stores in a shopping center, the number of retail businesses that it currently operates if any, audited financial statements from the past two (2) years or other financial information for the Successful Bidder, a contact person for the Proposed Assignee (other than, possibly, the Successful Bidder's counsel), or a business plan (other than stating that the Proposed Assignee intends to proceed without interruption).

23. While the Successful Bidder provided some financial information in the form of cash flow projections for the Proposed Assignee through June 30, 2020, the information was limited to the first half of 2020 and did not including any supporting information for these projections. The Successful Bidder also provided a projected balance sheet, but it did not include any financial support for its projections.

24. Moreover, the information provided indicates that the business will continue to operate without interruption, but it does not expressly provide whether the Successful Bidder intends to run the same business or if it intends to rebrand the assigned stores. To the extent the Successful Bidder intends to make any change, Landlord objects to any modification relating to use, exclusivity, and other provisions of the Lease.

25. Based on the lack of information and financial information available for the newly formed assignee, the Successful Bidder should provide a security deposit or letter of credit as

security for its future performance pursuant to Section 365(l), as set forth further below (*see* Subsection E).

26. As set forth above, based on the limited time (one day) between the objection deadline and Sale Hearing, and despite the continuing discussions between Landlord and counsel for the Successful Bidder, there is likely insufficient time to resolve and document any agreement between the parties prior to the Sale Hearing. To the extent these matters are not resolved, the Sale Hearing should be treated as a status conference with respect to the assumption and assignment of the Lease, while the parties resolve the objections set forth herein.

**C. Any Assumption and Assignment Must Comply with Terms of the Lease.**

27. Through the BAPCPA amendments, "Section 365(f)(1) is amended to make sure that all of the provisions of Section 365(b) are adhered to and that 365(f) of the code does not override Section 365(b)." Floor Statement of Senator Orrin Hatch, 151 Cong. Rec. S. 2459, 2461-62 (daily ed. March 10, 2005). In explaining the change to Section 365(f)(1), Senator Hatch stated:

> The bill helps clarify that an owner should be able to retain control over the mix of retail uses in a shopping center. When an owner enters into a use clause with a retail tenant forbidding assignments of the lease for a use different than that specified in the lease, that clause should be honored. Congress has so intended already, but bankruptcy judges have sometimes ignored the law.

151 Cong. Rec. S. 2459, 2461 (daily ed. March 10, 2005).

28. The changes embodied in the BAPCPA specifically preserve a landlords' right to enforce use and other lease provisions. Again, Senator Hatch's remarks in the Congressional Record clarify the intent behind Section 365(b) and 365(f):

> A shopping center operator . . . must be given broad leeway to determine the mix of retail tenants it leases to. Congress decided that use or similar restrictions in a retail lease, which the retailer cannot evade under nonbankruptcy law, should not be evaded in bankruptcy. It is my understanding that some bankruptcy judges have not followed this mandate. Under another provisions of the Code, Section 365(f), a number of bankruptcy judges have misconstrued the Code and allowed the assignment of a lease even though terms of the lease are not being followed.

151 Cong. Rec. S. 2459, 2461-62 (daily ed. March 10, 2005).

11

42963526 v1

Case 19-04687-DSC11    Doc 158    Filed 02/11/20    Entered 02/11/20 09:58:53    Desc
Main Document    Page 11 of 16

29. BAPCPA clarified Section 365 to reflect the Congressional intent that Debtor cannot use Section 365(f)(1) to void lease provisions, and to overrule those prior court decisions that did not strictly enforce lease terms. The predicate to the limited ability to assign a lease over a landlord's objection under Section 365(f) is that such assignment must be subject to the protections of Section 365(b)(1) and (3).

30. Section 365(f)(1) does not modify or override Section 365(b). <u>Trak Auto Corp. v. West Town Ctr. LLC (In re Trak Auto Corp.)</u>, 367 F.3d 237, 243-44 (4th Cir. 2004) (bankruptcy courts could not use the general anti-assignment provision of Section 365(f)(1) to trump the specific protections granted to landlords in Section 365(b)(3)(C)). Any assignment must remain subject to all provisions of the Lease, including those provisions concerning use, radius, exclusivity, tenant mix and balance. Landlord understands that, presently, the Successful Bidder intends to continue the current use under the Lease, but, as set forth above, it has not explicitly stated that it will continue to operate under the same trade name and comply with all provisions relating to use, exclusivity, and other provisions of the Lease. Thus, to the extent that it intends to change the use or other terms of the Lease in any way, Landlord reserves its right to object to any such change.

**D.   Any Sale Must Not Be Free and Clear of Obligations to Pay All Charges Due under the Lease, Including Unbilled Year-end Adjustments and Reconciliations.**

31. Based on the Sale Motion and Asset Purchase Agreement [Dkt. 147-1], Landlord is unclear whether the Debtors seek to sell their assets free and clear of all liens, claims, and encumbrances. Nonetheless, to the extent that the Debtors do seek to do so, the sale should not be free and clear of obligations under the Lease, including the obligation to satisfy unbilled taxes, reconciliations, percentage rent, or other year-end adjustments or unbilled charges that may have accrued under the Lease prior to the assignment of the Lease, but which have not yet been billed. The Debtors continue to be responsible for all such unbilled charges as they come due under the Lease, and the Debtors, or the Proposed Assignee, must continue to satisfy all charges due under

the Lease, including charges which have not yet been billed, reconciled and/or adjusted from pre-petition (or even post-petition) periods. Any assumption and assignment of the Lease cannot cut off the Landlord's right to recover unbilled charges that have accrued, or are accruing, under the Lease. If the sale is not subject to these reconciliation and adjustment claims, it is unlikely that these legitimate lease charges will ever be paid to the Landlord.

32. Finally, the Lease provides that the Debtors must indemnify and hold the Landlord harmless with respect to any existing claims which may not become known until after the assumption and assignment of the Lease, examples of which may include such claims as personal injuries at the Premises and damage to the Premises or Centers by the Debtors or their agents. Any order approving the assumption and assignment of the Lease must provide that the assumption and assignment is pursuant to the terms of the Lease, including that any assignee continues to be responsible for all such indemnification obligations, regardless of when they arose. In the alternative, the Debtors must provide (by insurance or otherwise) that it can satisfy the indemnification obligations under the Lease for any such claims that relate to the period prior to any assumption and assignment of the Lease.

### E. An Undercapitalized Assignee Should Provide Landlord with Additional Security.

33. The proposed assignee, as a newly formed company, does not possess sufficient operating experience or capitalization to satisfy Landlord's requirements. Thus, the proposed assignee should provide some type of credit enhancement as part of its adequate assurance of future performance demonstration, such as: (i) a guaranty of future performance from a financially capable parent entity; (ii) a letter or credit; or (iii) a cash security deposit. Pursuant to Section 365(l), the Landlord requires a security deposit or letter of credit as security for the performance of the proposed assignee's obligations under the Lease in the event that the proposed assignee fails to perform on a going-forward basis. This is a reasonable condition of demonstrating adequate assurance of future performance where the Debtors are seeking approval of a proposed assignee that has no operating history.

13

42963526 v1

Case 19-04687-DSC11    Doc 158    Filed 02/11/20    Entered 02/11/20 09:58:53    Desc
Main Document    Page 13 of 16

### III. JOINDER IN OTHER LANDLORD OBJECTIONS

34. To the extent consistent with the objections expressed herein, Landlord also joins in the objections of other landlords to the relief requested by the Debtors.

### IV. CONCLUSION

Landlord respectfully requests that: (i) unless all issues relating to cure and adequate assurance are resolved, the Sale Hearing be treated as a status conference on the assumption and assignment of the Lease, to allow the parties more time to resolve the objections set forth herein; or in the alternative, that (ii) any order approving the assumption and assignment of the Lease (a) require the assignee to provide a security deposit or letter of credit as security for its future performance, and (b) approve the cure amounts set forth herein by the Landlord; and (iii) grant such further relief as the Court deems proper.

Dated: February 11, 2020

        */s/Regan C. Loper*
        Regan C. Loper
        Heather A. Jamison
        **BURR & FORMAN LLP**
        420 North 20th Street, Suite 3400
        Birmingham, AL 35203
        Phone: (205) 458-5227
        Fax: (205) 458-5100
        Email: rloper@burr.com
        hjamison@burr.com

        and

        Dustin P. Branch
        Jessica M. Simon
        **BALLARD SPAHR LLP**
        2029 Century Park East, Suite 800
        Los Angeles, CA 90067
        Telephone: 424-204-4400
        E-mails: branchd@ballardspahr.com
        simonjm@ballardspahr.com

        *Attorneys for FW Waterside Commercial LLC*

## **CERTIFICATE OF SERVICE**

      I hereby certify that I have served a copy of the foregoing document by Notice of Electronic Filing via the Court's electronic notification system.

                                  */s/ Regan C. Loper*
                                  OF COUNSEL

## SCHEDULE A

| FW WATERSIDE COMMERCIAL LLC |||
|---|---|---|
| Store No. Unknown | Waterside Shopping Center | Fort Worth, TX |

42963526 v1