## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| **STEEL CITY POPS HOLDING, LLC,** *et al.*[1], | Case No. 19-04687-11 |
| | **(Jointly Administered)** |
| **Debtors.** | |

## NOTICE OF REVISED ASSET PURCHASE AGREEMENT

In accordance with this Court's Order, the Debtors filed with the Court the proposed Asset Purchase Agreement with SCP Coldworks, LLC on February 7, 2020 [Doc. 147].

Attached hereto as "Exhibit A" is a revised version of the Asset Purchase Agreement with changes shown in redline form to the original version of the Asset Purchase Agreement. This is to provide notice to all parties in interest that the Asset Purchase Agreement has been amended.

Dated this the 13th day of February, 2020.

/s/ Jeremy L. Retherford
Jeremy L. Retherford
BALCH & BINGHAM LLP
1901 Sixth Avenue North, Suite 1500
Birmingham, Alabama 35203
Telephone: (205) 251-8100
Facsimile: (205) 226-8799

*Attorney for SCP Coldworks, LLC*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Steel City Pops Holding, LLC (7080) and its Debtor affiliates Steel City Pops B'ham, LLC (4235); Steel City Pops DTX, LLC (2677); Steel City Pops FWTX, LLC (1016); and Steel City Pops, LKY, LLC (8898) The Debtors' service address is: 2821 Central Avenue, Birmingham, Alabama 35209. The Debtors have filed a motion for joint administration with the Court which has been granted.

# Exhibit A

**ASSET PURCHASE AGREEMENT**

THIS ASSET PURCHASE AGREEMENT ("**this Agreement**") is effective as of the [DAY] day of FEBRUARY 2020 (the "**Effective Date**") by and among STEEL CITY POPS B'HAM, LLC, an Alabama limited liability company formerly known as **STEEL CITY POPS HOLDING, LLC**, an Alabama limited liability company ("**SCP Holding**"); **STEEL CITY POPS B'HAM, LLC**, an Alabama limited liability company formerly known as STEEL CITY POPS, LLC ("**SCP BHM**"); **STEEL CITY POPS DTX, LLC**, an Alabama limited liability company ("**SCP DTX**"); **STEEL CITY POPS FWTX, LLC**, an Alabama limited liability company ("**SCP FWTX**"); and **STEEL CITY POPS LKY, LLC**, a Kentucky liability ("**SCP LKY**"; and collectively with SCP Holding, SCP BHM, SCP DTX and SCP FWTX, the "**Seller**"), SCP COLDWORKS, LLC, and Alabama limited liability company (the "**Buyer**"; and together with the Seller, the "**Parties**").

**Recitals**

A.      Seller is engaged in the business of manufacturing and sale of gourmet popsicles (the "**Business**").

B.      Each of the Seller has filed for protection under chapter 11 of 11 U.S.C. § 101, *et seq.* (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Northern District of Alabama (the "**Bankruptcy Court**") under case numbers 19-04687-DSC11, 19-04689-DSC11, 19-04692-DSC11, 19-04695-DSC11 and 19-04697-DSC11 (collectively, the "**Bankruptcy**")

C.      Seller seeks to sell its assets used in the Business through the Bankruptcy and Buyer desires to purchase the same.

**Agreement**

**NOW, THEREFORE**, for and in consideration of the foregoing Recitals and Loan, the mutual covenants and agreements set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are herein acknowledged, the Parties agree as follows:

1.      **Acknowledgement of Recitals and Agreement**.  The Parties agree that the Recitals set forth in this Agreement are true and accurate.  Seller agrees to sell the property described in Article 3 to Buyer upon the terms and conditions set forth in this Agreement, and Buyer agrees to purchase the property upon the terms and conditions set forth therein.

2.      **Deposit**.  Buyer agrees to pay Seller $100 as a deposit upon the signing of this Agreement. If Buyer defaults, Seller shall retain the deposit as liquidated damages, and Buyer shall have no further liability or obligations of any kind or nature whatsoever.

3.      **Assets Being Sold**.  Seller agrees to sell the following assets to Buyer (the "**Assets**"):

   a.   Accounts receivable. See Schedule A.

   b.   Inventory. See Schedule B.

   c.   Machinery and equipment. See Schedule C.

d. All patents, trademarks, licenses, copyrights, trade names, brand names and other intellectual property used by Seller in Seller's business, some of which are listed in <u>Schedule D</u>.

e. Customer lists, catalogs, and marketing materials used by Seller.

f. Product recipes, designs, drawings and any other trade secrets necessary in Buyer's business judgment necessary to continue the Seller's business operations and production.

g. Assumed leases and executory contracts. See <u>Schedule E</u>.

No property is being sold other than the items specified in this Article 3 (all such unsold property, the "**Excluded Assets**").

4. **Purchase Price**. The purchase price (the "**Purchase Price**") shall be comprised of the Bid Price plus the Assumed Obligations as defined below:

a. The Buyer shall provide $100,000.00 by way of immediately available funds and/or a credit bid pursuant to 11 U.S.C. § 363(k) (the "**Bid Price**").

b. The Buyer shall enter into that certain Assumption and Assignment Agreement by and between the Buyer, Seller, Redmont Private Debt Fund III, L.P. ("**Redmont**"), ServisFirst Bank ("**ServisFirst**") and Noble Bank and Trust ("**Noble**"; and collectively with Redmont and ServisFirst, the "**Lenders**") of even date herewith (the "**Assumption Agreement**") whereby the Buyer shall become a co-obligor on all the loans and obligations owed to the Lenders minus any portion of the Bid Price funded by a credit bid pursuant to 11 U.S.C. § 363(k) (after deduction of any credit bid, the "**Assumed Obligations**"). Said Assumed Obligations total no less than $7,725,072.98, prior to any deduction for a credit bid.

5. **Payment of Purchase Price**.

a. *Timing of Payment.* The Purchase Price shall be paid and/or consummated to the satisfaction of Seller and the Lenders on or before February 15, 2020 at 5 p.m. prevailing Central time which date may be extended if mutually agreed to by Seller, Buyer, and the Lenders (the "**Closing Date**").

b. *Responsibility for Sales or Use Taxes*. If any sales or use taxes are payable with respect to the transactions pursuant to this Agreement, such sales and use taxes shall be reported and paid by Buyer in a timely manner. Responsibility for other taxes is addressed in subsection 8.a of this Agreement.

6. **Prerequisites Obligation to Close.**

a. *Prerequisites to Seller's Obligation to Close*. Seller shall have no obligation to consummate this Agreement if any of the following conditions has not been satisfied as of the Closing Date (unless the condition has been waived in writing):

i. <u>Representations and Warranties</u>. Buyer's representations and warranties are true and correct in all material respects as of the Closing Date.

    ii.   <u>Fulfillment of Purchase Price</u>. Buyer has met all requirements for fulfillment of the Purchase Price as set forth in Article 5.

b.  *Prerequisites to Buyer's Obligation to Close*. Buyer shall have no obligation to consummate this Agreement if any of the following conditions has not been satisfied as of the Closing Date (unless the condition has been waived in writing):

    i.   <u>Representations and Warranties</u>. Seller's representations and warranties are true and correct in all material respects as of the Closing Date.

    ii.   <u>Required Obligations Performed</u>. Seller has performed all obligations required by this Agreement to perform before the Closing Date.

    iii.   <u>Bulk Sales Act</u>. Seller has taken all steps necessary to comply with any applicable Bulk Sales Act, and no creditor has made a valid objection to the sale pursuant to violation of such Bulk Sales Act.

    iv.   <u>Order Approving Sale by Bankruptcy Court</u>. The Bankruptcy Court shall have entered an order in form and containing terms and conditions acceptable to the Buyer approving the Sale as evidenced by this Agreement (the "**<u>Sale Order</u>**").

    v.   <u>Lender's Consent</u>.  The Lenders shall consent to the transactions as evidenced by this Agreement.

    vi.   <u>Assumption Agreement</u>. The Seller shall have entered into an Assumption Agreement.

    vii.   <u>Leases and Assumed Contracts</u>. Buyer shall have reached an agreement with the counterparty to any leases and/or executory contracts that the Buyer seeks for the Seller to assume and assign to Buyer as identified in <u>Schedule F</u>.

    viii.   <u>No Pending Litigation</u>. No legal or other proceeding has been instituted against Buyer or Seller that could prevent the sale from being completed as agreed to under this Agreement.

    ix.   <u>No Adverse Material Change in Seller's Business</u>. There has been no adverse material change in Seller's business since entry into this Agreement.

7.   **<u>Responsibilities at Closing.</u>**

a.  *Seller's Responsibilities at Closing*. Seller shall deliver the following items to Buyer at Closing:

    i.   <u>Assignment of Receivables</u>. An assignment of the receivables and whatever supporting papers Seller has that are necessary to make the assignment fully effective.

    ii.   <u>Bill of Sale</u>. A bill of sale covering all inventory, machinery and equipment and other property included in this sale.

iii. <u>Purchase Orders Since Closing</u>. Copies of all purchase orders made from the date of this Agreement to the closing and a schedule listing all purchase orders remaining unfilled at the closing.

iv. <u>Representations and Warranties</u>. All of Seller's representations and warranties shall remain true and correct in all material respects as of the Closing Date.

v. <u>Required Obligations Performed</u>. Seller shall have completed and/or performed all obligations that they are required by this Agreement to perform before the Closing Date.

vi. <u>Motion for Approval of Sale and Sale Order</u>. The Seller shall have filed a motion for approval of the Sale contemplated by this Agreement and a resulting Sale Order approving the same that states Seller has power to carry out the sale, that all acts required to authorize Seller to enter and execute this Agreement have been duly and validly taken, that this Agreement is legally binding on Seller and its member(s) or shareholder(s), that Seller has taken all acts required to comply with the applicable Bulk Sales Act, that all security interests on the Assets to be purchased by Buyer – other than the security interests of the Lenders – have been duly and validly released, and that the Sale shall not be treated as a default by Seller under the terms of any note, bond, mortgage, license or any other agreement to which Seller is a party.

b. *Buyer's Responsibilities at Closing*. Buyer shall deliver the following items to Seller at Closing:

i. <u>Immediately Available Funds</u>. To the extent necessary, the Buyer shall provide a wire to Seller or otherwise directed at Seller's direction of funds comprising the Purchase Price.

ii. <u>Representations and Warranties</u>. All of Buyer's representations and warranties shall remain true and correct in all material respects as of the Closing Date.

8. **<u>Assumed Liabilities</u>**.

a. *Assumed Liabilities*. On the Closing Date, Seller shall transfer and assign to Buyer and Buyer shall assume and thereafter pay as and when due, the following debts, liabilities and obligations of Seller (the "**<u>Assumed Liabilities</u>**") as they are constituted on the Closing Date:

i. Seller's obligations from and after the Closing Date under the assumed leases and executory contracts identified in <u>Schedule F</u> in respect of any of the assets transferred to Buyer.

ii. All purchase orders for the purchase of raw materials and supplies for use in Sellers's business and all sales orders from customers of Sellers's business.

iii. The Assumed Obligations of Seller owed to Lenders as more particularly described in the Assumption Agreement.

    iv.   Those liabilities reflected in the Statement of Assets and Liabilities as of the Closing Date provided by Seller and accepted by Buyer, in Buyer's sole discretion, except to the extent that they are paid prior to the Closing Date, and any trade payables and normal operating accruals and expenses incurred in the ordinary course of business as of the Closing Date. Environmental matters and warranty, guaranty, and product liability claims are deemed not to be incurred in the ordinary course of business.

    v.   Any sales tax obligations (not to exceed $130,642.60) for which Seller is currently liable and one-half of any employment tax obligations currently owed by Seller for time periods commencing April 1, 2019 and thereafter as well as the ad valorem taxes specifically stated in the Bankruptcy Court's order approving this transaction.

    b.  *Disclaimed Liabilities*. Except for those Assumed Liabilities described Paragraph 8a, Buyer shall not assume, and hereby expressly disclaims any assumption of, any debts, liabilities, or obligations, absolute or contingent, of any kind of Seller, including but not limited to indebtedness for money borrowed; claims, litigation, liabilities, and obligations (whether now pending or hereafter asserted) arising out of or relating to the operations of Seller's business prior to the Closing Date; income taxes, sales taxes, payroll taxes, withholding taxes, franchise taxes, and other taxes, including but not limited to any taxes that may arise out of or be assessable in respect of the transactions contemplated by this Agreement; liabilities or obligations relating to recapture of any of Seller's depreciation deductions or investment tax credits; liabilities or obligations of any kind in respect of any past or present equity holders, directors, officers, employees, or consultants of Seller, whether under any contract or agreement, pursuant to any pension plan or employee benefit or welfare plan, or otherwise; liabilities or obligations for accrued employee benefits and/or severance benefits in respect of any past or present employees of Seller or any ongoing obligations of Seller under any employment, consulting, or management agreement; any obligations or liabilities with respect to any unfunded pension or retirement benefits or with respect to any funding obligations to, or transactions in or relating to any trust funds under, any pension, employee benefit, or retirement plans now or previously maintained by or on behalf of Seller for the benefit of any past or present employees; lease obligations of any kind; or claims, obligations or liabilities in respect of any violation of any environmental laws or regulations or any other violation or alleged violation of applicable law. Buyer disclaims all liabilities listed above to the fullest extent permitted by law in addition to any additional liabilities disclaimed in the Sale Order.

    9.   **Buyer's Access to Information Prior to Closing.** Prior to closing, Seller shall permit Buyer and its counsel, accountants, and other representatives, upon reasonable advance notice to Seller during normal business hours and without undue disruption of Seller's business, to have reasonable access to the premises of Seller's business and the properties, books, accounts, records, contracts, and other documents and information relating to Seller's business. Buyer and its representatives also shall be permitted to freely consult with Seller's counsel concerning Seller and Seller's business. Seller shall make available to Buyer and its accountants all financial and tax records relating to Seller's business and shall cause Seller's accountants to cooperate with Buyer's accountants and make available to them all work papers and other materials developed by or in the possession of Seller's accountants to assist them in verifying the accuracy of the financial statements and the other representations and warranties of Seller.

    10.   **Operation of Seller's Business Prior to Closing.**

a. _Normal Conduct of Business_. From the date of this Agreement to the closing date, Seller shall carry on the activities of its business in substantially the same manner as it has been conducting them, shall maintain inventories in types and amounts consistent with historical practice, and shall not make or institute any unusual or novel practices or methods of sale, service, purchase, lease, management, accounting, or operation that will vary materially from those methods used by Seller as of the date of the execution of this Agreement. Seller shall not, without Buyer's prior written consent in each instance, incur any material liability or indebtedness or subject any of its assets to any liens or encumbrances, except in the ordinary course of business; make any change in management; pay or authorize any material salary increases or bonuses, except in the ordinary course of business and consistent with past practices; make any capital expenditures or commitments in excess of $2,500.00 ; enter into any employment, management, or consulting agreements; amend or cancel any material contract or enter into any material new agreement, commitment, or transaction, except in the ordinary course of business; dispose of any asset outside the ordinary course of business or dispose of any asset with a value in excess of $1,000.00; or materially change its method of collecting accounts receivable.

b. _Preservation of Business Relationships_. Seller and its ownership shall use their best effort to preserve Seller's relationships with the principal customers, suppliers and dealers of its business.

c. _Maintenance of Assets_. Seller shall maintain all Assets being sold to Buyer in their customary repair, order and condition (reasonable wear and use and damage by unavoidable casualty excepted) and shall take any steps reasonably necessary to preserve intangible Assets being sold to Buyer.

d. _Financial Records_. Seller shall maintain its books, accounts and records in accordance with generally accepted accounting principles consistently applied.

e. _Taxes_. Seller shall pay all taxes (other than taxes contested in good faith) levied against it and its property as they come due.

f. _No Breach of Contract_. Seller knowingly shall not take any action or fail to take any action that shall cause a breach of any contract, license or other agreement.

g. _No Disposition of Assets Sold_. Seller shall not sell or otherwise dispose of any of its Assets being sold to Buyer (other than inventory in the ordinary course of business) or encumber any of assets being sold to Buyer.

h. _Notice of Adverse Change in Financial Position_. Seller promptly shall notify Buyer in writing of any actual or threatened lawsuits and any actual or projected adverse changes in the financial position of its business.

i. _Insurance_.  Seller shall not make any changes in its insurance that affect the nature or amount of its existing coverage.

11.    **Noncompetition Agreement.**  For three (3) years following the closing date, Seller and its ownership agree not to compete with Buyer individually or collectively in the business of manufacturing or selling gourmet popsicles conducted by Seller prior to the closing in any states of the United States where Seller conducted that business – specifically Alabama, Georgia, Texas and Kentucky.  Seller and its stockholders agree not to help finance, advise, or otherwise assist anyone in conducting such a business in

competition with Buyer. If any court of competent jurisdiction determines that the restrictions imposed by this Agreement are unreasonable, the parties agree to comply with any restrictions that the court would determine to be reasonable under the circumstances.

12. **Payment of Receivables to Buyer**. Payments received by Buyer after the closing from payers who were customers of Seller's business prior to the Closing Date shall be retained by Buyer. Buyer shall not give any credit or other allowance on any receivable payment received by Buyer, even if said receivable payment was attributable to a receivable generated prior to the Closing Date. All payments for accounts receivable shall be retained by Buyer with no credit provided against the Purchase Price for said payment.

13. **Seller's Representations and Warranties**. The Seller makes the following representations and warranty, subject to the terms and conditions of the Sale Order:

   a. *Corporate Existence and Qualification to Do Business*. Seller represents and warrants that Seller is duly organized, validly existing and in good standing as a corporation under the laws of the state in which it was formed as of the Closing Date.

   b. *Authority to Enter Agreement*. Seller represents and warrants that Seller has full and complete authority to enter into this Asset Purchase Agreement and perform its obligations under this Agreement. All actions by management or ownership necessary to make this Agreement a valid and binding contract have been duly taken. This Agreement does not violate any law, rule or regulation of any governmental body with jurisdiction over Seller or any order, injunction, decree, statute, rule or regulation applicable to Seller or any of its property. This Agreement does not violate Seller's company or operating agreement(s). This Agreement does not breach any note, bond, mortgage, license, or other agreement to which Seller is a party or cause the acceleration of Seller's performance under any of those agreements to which Seller is a party.

   c. *Marketable Title.* Seller represents and warrants that Seller has good and marketable title to the property being sold to Buyer free of any and all claims, liens or other encumbrances, subject to those described in the Assumption Agreement.

   d. *No Other Assets Useful in Seller's Business*. Seller represents and warrants that Seller has no assets other than those listed in the schedules to this Agreement that would be useful in Seller's business.

   e. *Condition of Equipment and Machinery*. Seller represents and warrants that all equipment and machinery listed on Schedule C and Schedule D are in good operating condition and repair and shall be in good operating condition and repair on the closing date.

   f. *Intellectual Property*. Seller represents and warrants that all patents, trademarks, trade names, and copyrights listed on Schedule E are owned by Seller, were validly issued to Seller, and currently are in full force and effect. Seller has no notice of any alleged infringement or unlawful use of any patent, trademark, trade name, copyright, invention, formula, process or other intangible property right owned by others. Seller has not granted any person any license or other right to utilize any intellectual property for any purpose.

   g. *Financial Statements*. Seller represents and warrants that Seller's financial statements for its business for the period ending November 30, 2019 fairly present the financial position and operations for Seller's business for the periods covered and have been prepared in

accordance with generally accepted accounting principles consistently applied. Except as stated in the financial statements, there are no differences between the financial statements and the accounting methods applied by Seller for tax purposes.

h.   _Creditors_. Seller represents and warrants that the list of Seller's creditors for its business, attached to this Agreement as Exhibit A, includes their names and addresses, amounts owed and is true and correct as of January 30, 2020. Seller has no knowledge of any liabilities, absolute or contingent, other than those on the list of those creditors. No one has a security interest in any of Seller's property being transferred to Buyer except to Lenders as identified in the Assumption Agreement.

i.   _Accounts Receivable_.  Seller represents and warrants that Seller's accounts receivable from its business, attached to this Agreement as Schedule A, is true and accurate as of December 31, 2019.

j.   _Quality of Inventory_. Seller represents and warrants that Seller's finished goods inventory for its business generally complies with warranties it gives to its customers, generally is of acceptable quality, and generally satisfies manufacturing and design specifications. Seller's work in process, purchased parts and raw material for its business generally can be processed into finished goods of good and merchantable condition using ordinary procedures. Seller cannot be held liable to any third party because any particular item of inventory fails to satisfy the standards expressed in this representation.

k.   _Tax Returns_. Seller represents and warrants that Seller has filed all federal, state and local tax returns required to be filed and has timely paid all taxes shown on those returns.

l.   _Representatives and Distributors_. Seller represents and warrants that Seller's list of representatives and distributors, attached to this Asset Purchase Agreement as Exhibit B, is true and accurate as of the date of this Agreement.

m.   _Employees_. Seller represents and warrants that Seller's list of employees, attached to this Agreement as Exhibit C, is a complete list of Seller's employees and their salaries for its business as of the Closing Date.  Seller is not a party to or bound by any collective bargaining agreement, employment agreement, consulting agreement, management agreement, or other commitment for the employment or retention of any person, and no union is now certified or, to the best of Seller's knowledge, claims to be certified as a collective bargaining agent to represent any employees of Seller's business. There are no labor disputes existing or, to the best of Seller's knowledge, threatened, involving any employees of Seller's business, and Seller has not had any unfair labor practice charges or material labor difficulty in the past three (3) years.

n.   _Employee Benefit Plans._ Seller represents and warrants that, except as disclosed in Exhibit D to this Agreement, Seller does not maintain and is not required to make any contributions to any pension, profit-sharing, retirement, deferred compensation, or any other such plan or arrangement for the benefit of any employee, former employee or other person.  Seller has, as of the date of the execution of this Agreement, made all required payments, contributions, and filings under or in respect of any such plans or arrangements, and no act, omission, event, or condition has occurred that would give rise to any liability of Seller thereunder, other than the obligation to make normal payments and contributions under or with respect to such plans or arrangements.

o. _Contracts_. Seller represents and warrants that Seller has no contracts or commitments relating to the Assets or business subject to this Agreement, whether written or oral and whether or not legally binding; service, maintenance, and other contracts relating to the assets subject to this Asset Purchase Agreement if they are in the ordinary course of business, involve an aggregate expenditure of less than $899.00 after the date of execution of this Agreement, and can be terminated by Seller; purchase orders that, to the best of Seller's knowledge are in the ordinary course of business, involve a purchase price of less than $899.00, and can be performed by Seller within 3 months from the date of execution of this Agreement; sale orders that, to the best of Seller's knowledge, are in the ordinary course of business, are priced consistently with Seller's usual practice, involve an aggregate sales price of less than $899.00, and are performable by Seller within 3 months from the date of execution of this Agreement. Seller is not in default under any of the contracts described in this paragraph 13o and has no knowledge of any default with respect to any such contract by the other party to the contract or any claim of default by any such party. Complete and correct copies of all contracts, together with all amendments to the contracts have been delivered to Buyer. Seller has made all of the purchase and sales orders in the ordinary course of its business and that the purchase orders do not grant special discounts or include additional products or services other than those stated in the order.

p. _No Pending or Threatened Litigation_. Seller represents and warrants that no suit, action, arbitration, or other proceedings are pending against Seller, that Seller has no knowledge of any governmental investigations or any proposed or threatened claims by any party, and that Seller is not aware of any event, cause, or condition that reasonably might give rise to or properly form the basis of any suit, action, arbitration, or other proceeding. Seller is not currently engaged in any legal action to recover any amounts due or damage caused Seller. Seller substantially has complied with and not materially violated all laws, regulations and engineering standards applicable to the Seller's business, including, but not limited to, safety, environmental and employment laws and regulations. These representations and warranties shall survive the closing and shall be deemed operative for six months after the closing.

q. _Seller's Business as a Going Concern_. Seller represents and warrants that Seller has no knowledge of any fact, event, circumstance, or condition (including, but not limited to any announced or anticipated changes in the policies of any substantial customer but not including any general, industry-wide conditions) that would materially impair Buyer's ability to continue Seller's business in substantially the manner as it has been conducted by Seller.

14. **Buyer's Representations and Warranties**. The Buyer makes the following representations and warranty, subject to the terms and conditions of the Sale Order:

a. _Corporate Existence and Qualification to Do Business_. Buyer represents and warrants that Buyer is duly organized, validly existing, and in good standing as a corporation under the laws of the State of Alabama as of the date of this Agreement.

b. _Authority to Enter Agreements_. Buyer represents and warrants that Buyer has full and complete authority to enter into this Agreement and the Assumption Agreement and to perform its obligations under this Agreement and the Assumption Agreement. All actions by directors or shareholders necessary to make this Agreement or the Assumption Agreement a valid and binding contract have been duly taken. The execution and consummation of this Agreement or the Assumption Agreement shall not violate any

applicable law, rule or regulation of any governmental body with jurisdiction over Buyer, breach Buyer's governing documents, or conflict with or result in the breach of any of the terms, provisions, or conditions of any contract, agreement, order, or judgment to which Buyer is a party or to which Buyer is bound.

c. *No Pending or Threatened Litigation*. Buyer represents and warrants that there is no pending or threatened legal or administrative action against Buyer that shall adversely affect Buyer's ability to perform its obligations under this Agreement.

15. **Termination of Agreement**.

a. *Grounds for Termination*. This Agreement may be terminated by any of the parties at any time before the closing if a Sale Order is not entered. Additionally, this Agreement may be terminated if there is an adverse material change in the financial condition of Seller's business, Seller suffers a material loss or damage to any of the Assets to be purchased that materially affects Buyer's ability to conduct Seller's business after the Closing Date; any of the representations and warranties turn out to have been materially false or misleading as of the date that this Agreement was executed or the Closing Date (unless the false or misleading representation or warranty was waived by the party seeking to terminate this Agreement); or the terms and acts required by this Agreement have not been materially complied with or materially performed by the Closing Date (unless compliance or performance was waived by the party seeking to terminate this Agreement).

b. *Procedure for Terminating Agreement*. Termination is accomplished by giving written notice to the other parties.

c. *Consequences of Termination*. If this Asset Purchase Agreement is terminated no party shall have any liability to another party.

16. **Amendment of Agreement**. This Agreement may be amended only in a writing signed by both Seller and Buyer.

17. **Broker's or Finder's Fee**. No person is entitled to any brokerage commission, finder's fee or similar payment for any transaction contemplated by this Asset Purchase Agreement.

18. **Notices**. Any notice required or permitted by this Agreement shall be considered sufficiently given if it is delivered in person, telecopies, overnight delivery or sent by certified mail, return receipt requested, postage prepaid and addressed as follows (or any other address furnished in writing by the party):

| Seller: | Buyer: |
|---|---|
| Steel City Pops Holdings, LLC | SCP Coldworks, LLC |
| 2821 Central Avenue, Suite 109 | 820 Shades Creek Parkway, Suite 1200 |
| Birmingham, Alabama 35209 | Birmingham, Alabama 35209 |

Notices that are delivered in person or telecopied shall be deemed given on the date delivered or telecopies. Notices that are mailed shall be deemed given on the date mailed.

19. **Binding Effect of Agreement**. This Agreement shall be binding on and shall inure to the benefit of the parties to this Agreement and their heirs, executors, successors and assignees.

20. **Governing Law, Venue and Jury Waiver**.  This Agreement shall be construed and governed by the laws of the State of Alabama and remain subject to the jurisdiction of the United States Bankruptcy Court of the Northern District of Alabama.   ALL PARTIES TO THIS AGREEMENT HEREBY WAIVE THE RIGHT TO ANY JURY TRIAL IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM BROUGHT BY ANY PARTY AGAINST ANY OTHER PARTY.

**[REMAINDER OF PAGE INTENTIONALLY BLANK]**

THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

| BUYER: | SELLER: |
|---|---|
| **SCP COLDWORKS, LLC** | **STEEL CITY POPS HOLDING, LLC**<br>**STEEL CITY POPS B'HAM, LLC** |
| By:_____ | **STEEL CITY POPS DTX, LLC** |
| | **STEEL CITY POPS FWTX, LLC** |
| Its:_____ | **STEEL CITY POPS LKY, LLC** |
| | |
| | By:_____ |
| | |
| | Its:_____ |

**SCHEDULE A**
Accounts Receivable

**SCHEDULE B**
Inventory

**SCHEDULE C**
Machinery & Equipment

**SCHEDULE D**
Patents, Trademarks, Licenses, Copyrights, Trade Names, Brand Names & Other Intellectual Property

**SCHEDULE E**
Assumed Leases & Executory Contracts

**EXHIBIT A**
Creditors

**EXHIBIT B**
Representatives & Distributors

N/A

**EXHIBIT C**
Employee Information

**EXHIBIT D**
Employee Benefit Plan(s)


Steel City Pops offers Blue Cross Build Shield health insurance, Guardian dental and vision insurance, and an HSA through Blue Cross Blue Shield.  These plans are offered to select employees.  Additionally, there is a cell phone reimbursement of 100.00 per month.