# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| IN RE:<br><br>**STEEL CITY POPS HOLDING, LLC,** *et al.*,[1]<br><br>Debtors. | **Chapter 11**<br><br>**Case No. 19-04687-DSC11**<br><br>**(Jointly Administered)** |

## MEMORANDUM OPINION

The matter before the Court is a Motion for Relief from Judgment or Order or to Alter, Amend or Vacate Order ("Motion for Relief") (doc. 198) filed on behalf of Mark Hicks, Peter Burke, David Hicks, and Mark Helm (collectively "Movants"). A hearing on the Motion for Relief was held on April 1, 2020. Appearing at the hearing were Walter F. McArdle and Frederick M. Garfield, counsel for Movants; Harry P. Long and Lee R. Benton, Debtors' counsel; Jeremy Retherford, counsel for Redmont Private Debt Fund III, L.P., and SCP Coldworks, LLC; Daniel D. Sparks, counsel for James Allen (Jim) Watkins; Heather A. Jamison, counsel for Bayer Development Company, LLC, Fritz Farm Retail Company, LLC, IMI Huntsville, LLC, and AmREIT Preston Royal NEC, L.P.; Brian R. Walding, counsel for ServisFirst Bank; and Jon Dudeck, counsel for the United States Bankruptcy Administrator for the Northern District of Alabama ("Bankruptcy Administrator").[2]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Steel City Pops Holding, LLC (7080) and its Debtor affiliates Steel City Pops B'ham, LLC (4235); Steel City Pops DTX, LLC (2677); Steel City Pops FWTX, LLC (1016); and Steel City Pops, LKY, LLC (8898). The Debtors' service address is: 2821 Central Avenue, Birmingham, Alabama 35209.

[2] Pursuant to Administrative Order 20-04 and due to the COVID-19 outbreak, all hearings before the United States Bankruptcy Court for the Northern District of Alabama since March 23, 2020, have been held telephonically absent extraordinary circumstances. The hearing held in this case on April 1, 2020, was held telephonically.

The Court has jurisdiction to hear these matters pursuant to 28 U.S.C. §§ 157 and 1334, and the General Order of Reference, as amended, entered by the United States District Court for the Northern District of Alabama. This is a core proceeding under 28 U.S.C. § 157(b)(2).

Based upon the filings, the representations and arguments of the parties, and for the reasons set forth herein, the Court **FINDS** and **CONCLUDES** as follows:[3]

## INTRODUCTION

This is a case about the popsicle business. The Debtors, a parent holding company and four affiliate LLCs, were "engaged in the production and sale of gourmet popsicles" that operated under the Steel City Pops brand.[4] (Doc. 18 at 2; doc. 26 at ¶ 1.) Each business entity owned and operated several Steel City Pops locations throughout Alabama, Texas, and Kentucky. (Doc. 26 at ¶ 9.) Jim Watkins, Manager for the Debtors and Trustee for a trust that owned 100% of the membership interest in each of the companies, created Steel City Pops and opened it for business in 2012. (Doc. 26 at ¶ 1.)

For several months prior to the commencement of this bankruptcy case, the Debtors undertook an "aggressive strategy for expansion" that proved improvident. Indeed, "delays, cost overruns, and lower than expected sales [in] these new and prospective locations drained the Debtors of cash until their basic operations were at risk." (Doc. 26 at ¶ 14.) The failed expansion strategy, coupled with typically slow sales in the fall and winter months, reduced cash available for the Debtors' operations. (*Id.*) And with debts owed to lenders approaching $7 million, bankruptcy became imminent. Each business entity filed for chapter 11 bankruptcy separately and

---

[3] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files, and the Court does so in this case. *See IT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir. Unit B July 1981); *Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975).

[4] For ease of reference, the Court will refer to the going concern as "Steel City Pops."

then moved for joint administration of the cases. The Court granted that motion and the cases have proceeded under the *"In re Steel City Pops Holding, LLC, et al."* designation. From the outset of this chapter 11 case, the Debtors' goal was to market and sell their assets as going concerns. (*Id.* at ¶ 16.) To that end, the Debtors, with prior Court approval, closed the sale of Steel City Pops on February 18, 2020. (Doc. 199.)

Prior to the closing, the Movants objected to the sale taking place but took no formal steps to stay the sale. (Doc. 162.) The Movants are individuals who sued Mr. Watkins in the Circuit Court of Jefferson County, Alabama ("State Court"), for $650,000 plus interest and costs on unsecured signature loans allegedly made by Mr. Watkins under several promissory notes executed by Watkins between 2015 and 2017 for the Movants' investment in the business operation of Steel City Pops. (AP Doc. 1 at ¶ 8.) The State Court case was removed here, to bankruptcy court, and is ongoing as a separate adversary proceeding.[5] The Movants are plaintiffs in the adversary proceeding just as they were plaintiffs in the State Court case. As it relates to the instant chapter 11 case, however, the Movants are appearing as parties in interest and creditors. Under those auspices, they must claim some "pecuniary interest, practical stake, or legally protected interest" against the chapter 11 estate of the Debtors. *In re Surfside Resort and Suites, Inc.*, 344 B.R. 179, 188 (Bankr. M.D. Fla. 2006) (citations omitted.) And although the Movants disavowed any relationship to this chapter 11 case when they sought remand of their complaint against Mr. Watkins back to State Court (AP doc. 5), presumably, the claim or legally protected interest that favors them as parties in interest and creditors here derives from their claims against Mr. Watkins and his relationship to the Debtors. Despite these inconsistencies, there is no challenge to the Movants' standing and their stake appears sufficient under the circumstances of this chapter 11

---

[5] The above-referenced adversary proceeding is case number 19-00096. References made to the docket in the adversary proceeding are prefaced with the abbreviation "AP."

3

case to consider their position that the sale "leaves the creditors and the Debtors bankruptcy case without any remedy and probably with no hope of receiving a return or dividend in this case." (Doc. 198 at ¶ 9.)

**FINDINGS OF FACT**

Steel City Pops Holding, LLC, and its Debtor affiliates, Steel City Pops B'ham, LLC; Steel City Pops DTX, LLC; Steel City Pops FWTX, LLC; and Steel City Pops, LKY, LLC, (collectively, the "Debtors") filed for chapter 11 bankruptcy relief on November 14, 2019. (Doc. 1.) As with many chapter 11 cases, the Court heard first day motions soon after the case was filed and, among other things, approved the joint administration of the cases and entered interim orders on November 27, 2019, concerning the use of cash collateral and the payment of employee wages and salaries. (*See e.g.* docs. 28, 29, 30, 31.) Mr. Watkins, as Manager of the Debtors, filed a Declaration on November 24, 2019, in support of the first day pleadings. (Doc. 26.) In that Declaration, Mr. Watkins stated: "The Debtors' goal in these chapter 11 cases, is to market and sell its assets as going concerns, and use the funds generated from such sale(s) to fund a liquidating chapter 11 plan." (*Id.* at 16.)

The Debtors filed a motion on January 6, 2020, for an Order (a) authorizing the procedure for the sale of substantially all assets for the Debtors pursuant to 11 U.S.C. § 363; (b) authorizing the procedure for assumption and assignment of certain executory contracts and unexpired leases pursuant to 11 U.S.C. 365; and (c) for related relief (the "Sale Procedure Motion"). (Doc. 89.) The Movants did not object to the Sale Procedure Motion. The Court conducted a hearing on the Sale Procedure Motion on January 22, 2020. At that time, Debtors' counsel advised the Court of a proposed sale and a draft asset purchase agreement whereby one of the Debtors' secured lenders, Redmont Private Debt Fund III, L.P. (the "Fund"), would submit a credit bid which would "take

4

care of" the secured debts and catch up leases that were to be assumed. Debtors' counsel represented to the Court that Steel City Pops was "bleeding cash" trying to sell popsicles in January and that the proposed sale was intended as a quick and fair resolution under the circumstances. The Court questioned Debtors' counsel about whether there was any reasonable chance of any other bidders besides the credit bid; Debtors' counsel represented that he had no expectation of any other bidder. The Court also questioned Debtors' counsel about the Debtors' marketing efforts of business assets. Counsel represented that while properties had been actively marketed in the past, there was no current broker. Counsel made this representation in consultation with Mr. Watkins, who attended the January 22, 2020, hearing. Debtors' counsel also represented that he did not believe any entity would pay an amount above the credit bid. The Movants did not make an appearance on the record at the January 22, 2020, hearing.

The Court entered an Order granting in part the Sale Procedure Motion on January 24, 2020, and the Debtors' request for approval of the sale was set for hearing on February 12, 2020. (Doc. 124.) The Debtors filed a "Notice of Highest and Best Bid Re: Substantially All of the Debtors' Assets and Assumption and Assignment of Certain Executory Contracts and Unexpired Leases" (the "Notice") on January 31, 2020. (Doc. 134.) The Notice advised that SCP Coldworks, LLC, an Alabama limited liability company, submitted the highest and best bid. (*Id.*) The SCP Coldworks bid was the only bid received. SCP Coldworks filed a proposed Asset Purchase Agreement (reciting its agreement with the Debtors) on February 7, 2020 (doc. 147), and it filed a revised agreement on February 13, 2020. (Doc. 176.)

The Movants filed an objection to the sale on February 11, 2020. (Doc. 162.) Other creditors, primarily lessors, also objected, but those objections largely concerned cure amounts or a lack of adequate assurance. (*See e.g.* docs. 158, 161, 163, 164.) Thus, they were not objections

5

to the sale, per se. Those objections were resolved (or there was an agreement in place regarding resolution) on or before the February 12, 2020, sale hearing. Therefore, the Movants' objection, which was the "only wholesale objection" to the sale, was also the only objection that had not been resolved, at least in principle, by the conclusion of the February 12, 2020, sale hearing. (*See* doc. 230 at 3.)

At the February 12, 2020, hearing, evidence about the proposed sale was proffered to the Court. The proffer was made by counsel for SCP Coldworks on behalf of Philip Hodges, the President and Founder of Redmont Capital, who attended the hearing. The connection between the various entities associated with the proposed sale was reiterated to the Court by proffer, as was the genesis of the operative bid. The proffer included that Redmont Capital was the manager of the Fund, that the Fund was a secured lender to the Debtors, and the sole member of SCP Coldworks; that the operative, and only, bid was offered by the Fund as a credit bid for a portion of the debt owed to the Fund, and that SCP Coldworks was designated as the buying entity in the transaction.

A proffer was also made about Redmont Capital, its history, its strategic advisory board, and its investments of over $50 million in over 30 companies. Projected cash flow, month over month growth, store reductions (from 25 to 12 stores), projected in-store sales ($4 million), projected vending sales ($2.7 million), and projected wholesale operations ($840,000) for Steel City Pops were proffered, as well. The role and experience of Pete Srodoski, who attended the hearing, was also proffered; specifically, it was proffered that Mr. Srodoski had over fifteen years' experience with corporate retail management, including the previous four years in the popsicle business, and that he was hired to help operate SCP Coldworks. Mr. Srodoski, it was proffered, had developed a new marketing approach distinct from previous operations. Evidence about ongoing leases was also proffered. And a proffer was made that there had been no collusion with

6

any other bidders and that the prospective buyer had acted in good faith at all times. After the evidentiary proffer was made, the Movants did not solicit any cross-examination. Nor did the Movants put on any evidence of their own.

The Court heard arguments in support of the Movants' objection, but ultimately overruled their objection at the conclusion of the sale hearing. The Court entered an Order approving the sale, overruling the Movants' objection, and approving the Debtors' assumption and assignment of certain executory contracts and leases ("Sale Order") on February 14, 2020. (Doc. 178.) The Court found that SCP Coldworks was a good faith purchaser within the meaning of § 363(m) of the Bankruptcy Code. (Doc. 178 at 5.) Neither the Movants nor any other party in interest attempted to stay the sale, and it closed on February 18, 2020. (Doc. 199.) The Movants filed their Motion for Relief on February 28, 2020, seeking "entry of an order setting aside the order approving the sale" and any other relief to which they were entitled. (Doc. 198 at 1.) Responses in opposition to the Motion for Relief were filed by the Debtors, SCP Coldworks, and Mr. Watkins. (Docs. 234, 230, and 232, respectively.) The Court held a hearing on the Motion for Relief on April 1, 2020. At that hearing, the Movants made arguments through their counsel and rested on their submissions. They did, however, indicate through argument that their cause was less about undoing the sale and more about altering or amending certain provisions of the Sale Order, including the successor liability provision and other related provisions, as discussed further in the Conclusions of Law.

## CONCLUSIONS OF LAW

"There is no question that confidence in the finality of bankruptcy sales is of critical importance, and there are only limited circumstances in which a bankruptcy sale should be set aside." *In re MMH Automotive Group, LLC*, 385 B.R. 347, 360 (Bankr. S.D. Fla. 2008) (citing

7

*Golfland Entm't Ctr., Inc. v. Peak Inv., Inc. (In re BCD Corp.),* 119 F.3d 852 (10th Cir.1997). *Collier on Bankruptcy*, a leading treatise in bankruptcy law, puts the policy of finality in no uncertain terms:

> A bankruptcy court may vacate a prior order confirming a sale in only the most limited circumstances, such as fraud or mistake. Although mere inadequacy of price or minor errors might justify a refusal to approve a sale, these would be insufficient to justify vacating approval previously granted. Once approval has been granted, the order is not subject to collateral attack, because approval of a sale under section 363 is an *in rem* proceeding and is therefore good as against the world, not just as against those who were actual parties in the chapter 11 cases.

3 Richard Levin & Henry J. Sommer, *Collier on Bankruptcy* ¶ 363.11 (16th ed.). And because sale orders are not subject to collateral attack, they can be challenged only by direct appeal or a post-judgment motion. *See In re MMH Automotive*, 385 B.R. at 355 (Bankr. S.D. Fla. 2008) ("In the absence of an appeal of a final sale order, the only manner in which a sale order may be challenged is through Rule 60(b)."). Here, the Movants did not attempt to stay the sale, and they challenge the Sale Order with a post-judgment motion made pursuant to Rules 59 and 60.[6]

***Rule 59***

Turning first to Rule 59, no aspect of the Motion for Relief clearly delineates error in the Sale Order that would require amendment or alteration.[7] From the oral arguments advanced in support of the Motion for Relief, however, the gist of the Movants' Rule 59 argument would appear to concern successor liability and related provisions under the Sale Order. In that regard, the Motion for Relief states: "The Motion to Sell and the Order seek to accomplish results and enforce

---

[6] Rules 59 and 60 of the Federal Rules of Civil Procedure are made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 9023 and 9024. *See* Fed. R. Bankr. P. 9014 (contested matters), 9023 (making Rule 59 applicable), and 9024 (making Rule 60 applicable).

[7] The Court notes the lack of reported authority for challenging § 363 sales under Rule 59. Most post-judgment challenges to § 363 sales proceed under Rule 60 instead. However, the Movants seek Rule 59 relief here and, as such, the Court will contemplate it.

8

provisions which should not be included in an order approving a sale. It includes a provision barring entities from imposing any liability on the purchaser as a successor in interest, even though that issue has not been adjudicated." (Doc. 198 at ¶ 3.)

Notwithstanding the Movants objection to the successor liability provision or any other provision of the Sale Order, they cannot avail themselves of Rule 59 relief without "newly discovered evidence" or authority revealing that the Sale Order is manifestly erroneous in law or fact. *See Arthur v. King,* 500 F.3d 1335, 1343 (11th Cir. 2007) (holding that "[t]he only grounds for granting [a Rule 59] motion are newly-discovered evidence or manifest errors of law or fact.") (citations omitted). The Movants have not carried this burden. The Movants proffered no evidence, much less newly discovered evidence, to support amending or altering the Court's judgment. And to the extent the Movants seek to alter or amend the Sale Order as to the successor liability provision, or any other provision for that matter, no authority is cited nor argument advanced that the inclusion of such a provision is a manifest error of law or fact. Besides, such provisions are commonplace in § 363 sale orders. [8]

The Sale Order provision that the Movants oppose, but which they do not assert as manifestly erroneous, states: "Without limiting the generality of the foregoing, the Buyer shall

---

[8] The Court notes that not only have successor liability provisions become widely accepted in § 363 sale orders, some sale orders even reference the incentive for including such provisions within the order itself. *See e.g. In re Tougher Industries, Inc.*, Nos. 06-12960, 07-10022, 2013 WL 1276501, at *8 (Bankr. N.D.N.Y. Mar. 27, 2013) ("The possibility of transferring assets free and clear of successor liability was a crucial inducement to TIE and TME entering into the Asset Purchase Agreement with the Trustee and, ultimately, purchasing the Debtors' assets. If the sale had not been free and clear, TIE and TME would presumably have paid less for the assets."); *In re Borders Group, Inc.*, No. 11-10614, 2011 WL 5520261, at *3 (Bankr. S.D.N.Y. Sept. 27, 2011) ("Without the protections afforded to the Winning Bidders under the Bankruptcy Code and this Order, the Winning Bidders would have not offered the consideration indicated in the Agreements and the Specified License Agreements for the Assets and the Specified Licenses granted thereto.").

have no successor or transferee liability of any kind or character with respect to any 'claim' (as defined in the Bankruptcy Code) against the Debtors or any other liability . . . except for those liabilities expressly assumed by the Buyer pursuant to the APA as 'Assumed Liabilities.'" (Doc. 178 at ¶ 36.) This provision mirrors almost verbatim the provision in *In re EaglesPan Steel Structures, LLC*, No. 23491-MER, 2010 WL 4519598, at *1 (Bankr. D. Colo. July 13, 2010), where the court approved the following stipulation: "Without limiting the generality of the foregoing, and except as otherwise specifically provided herein and in the Asset Purchase Agreement, the Buyer shall not be liable for any claim against the Debtor or any of its predecessors or affiliates, and the Buyer shall have no successor or transferee liabilities of any kind or character whether known or unknown as of the Closing . . . ." *See In re EaglesPan*, 2010 WL 4519598, at *8. The Sale Order also provides that: "The transfer of the Assets to the Buyer does not amount to a consolidation merger, or de factor merger of the Buyer and the Debtors or the Buyer and Debtors' estates. There is not substantial continuity between the Buyer and Debtors or the Buyer and the Debtors' estates, the Buyer is not a mere continuation of the Debtors or the Debtors' estates, and the Buyer does not constitute a successor to the Debtor or the Debtors' estates." (Doc. 178 at ¶ 35.) Again, other courts have approved sale orders with similar provisions. *See e.g. In re Marsh Supermarkets Holding, LLC,* No. 17-11066 BLS, 2017 WL 5464368, at *4 (Bankr. D. Del. June 6, 2017) ("Buyer is not a successor to any Debtor or any Debtor's estate by reason of any theory of law or equity, and the Sale does not amount to a consolidation, merger, or de facto merger of Buyer or any of the Debtors. Neither Buyer nor any of its agents, representatives or affiliates shall assume or in any way be responsible for any obligation or liability of any Debtor (or any affiliates thereof) and/or any Debtor's estate except as expressly provided in this Sale Order or the APA."). The Movants have not shown that inclusion of the successor liability provision or any other

10

provision in the Sale Order is manifestly erroneous either as a matter of fact or law. And because the Sale Order mimics provisions that are standard fare for § 363 sales, the Court is not inclined to ascribe error where none has been specifically identified.

Finally, contrary to the purpose of Rule 59, the Movants have sought relief based on arguments and suppositions already put before this Court. For example, first in their objection and now in their Motion for Relief, the Movants submit Mr. Watkins's lack of testimony at the § 341 meeting of creditors as grounds for relief. (Doc. 162 at ¶ 2; Doc. 198 at ¶ 5.) The Motion for Relief also relies on the Debtors' alleged failure to provide financial information. That, too, was asserted in the Movants' objection to the sale.[9] (Doc. 198 at ¶ 5; Doc. 162 at ¶ 3.) And in both the objection and Motion for Relief, the Movants claim bad faith and the lack of a good faith purchaser. (Doc. 162 at ¶¶ 6, 7, 8; doc. 198 at ¶¶ 4, 6.) The problem with this approach is that an aggrieved party "cannot use a Rule 59(e) motion to relitigate old matters, raise arguments or present evidence that could have been raised prior to the entry of judgment." *Michael Linet, Inc. v. Village of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005). Thus, "[t]he purpose behind Rule 59(e) is not to give a party the opportunity to rehash evidence, legal theories, or arguments capable of being offered or raised prior to the entry of judgment." *Carr v. Audientis, LLC,* 585 B.R. 916, 919 (Bankr. M.D. Ala. 2018) (citing *Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004)). "Instead, granting a Rule 59(e) motion to reconsider a judgment after its entry is an extraordinary remedy that must be used sparingly." *Id.* at 919-20. For this additional reason, Rule 59 is unavailing.

---

[9] The Bankruptcy Administrator moved to dismiss or convert this case (doc. 139) for the Debtors' failure to disclose certain financial information, including bank statements and monthly operating reports, as required under the Court's chapter 11 operating order. (Doc. 42.) The Movants included this argument in their objection to the sale and the Motion for Relief. They also joined the Bankruptcy Administrator's motion to dismiss or convert this case. (Doc. 211.) Because the Debtors eventually filed the required information, the Bankruptcy Administrator withdrew his motion during the April 1, 2020, hearing and has not objected to the sale or the Sale Order.

*Rule 60(b)*

Rule 60(b) affords the Movants no relief either. As one court put it, "relief under Rule 60(b) requires extraordinary circumstances that should be employed judiciously as a scalpel and not as a bludgeon." *In re Buerge,* No. 11-20325, 2013 WL 934836, at *1, *5 (Bankr. D. Kan. Mar. 7, 2013). Here, the Movants invoke Rule 60 generally, without committing to any of the enumerated grounds for relief under the rule. (*See* doc. 198.) For this reason, the Court considers the Motion for Relief in context of the entire rule. Based on the allegations in the Motion for Relief, it is apparent that certain prongs of Rule 60(b) are, at the outset, untenable. For example, there is no showing of mistake, inadvertence, surprise, or excusable neglect necessary to invoke and substantiate a Rule 60(b)(1) challenge. And, as discussed above, the Movants have proffered no newly discovered evidence to support a claim for relief under Rule 60(b)(2). Moreover, there are no assertions that the judgment is void (Rule 60(b)(4)); "has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable;" (Rule 60(b)(5)). That leaves Rules 60(b)(3) and 60(b)(6) for consideration.

Rule 60(b)(3) provides relief for fraud, misrepresentation, or misconduct by an opposing party. Again, the Movants have not specifically pled Rule 60(b)(3) relief but, fairly construed, the Motion for Relief does raise allegations that sound in fraud. For example, the Motion for Relief asserts that "[w]ithout any evidence, the order finds and concludes that the transfer of the Debtors' assets are not fraudulent transfers." (Doc. 198 at ¶ 10.) The Motion for Relief also claims that the Debtors are "gaming the system." (Doc. 198 at ¶ 13.) And the Motion for Relief maintains that the Debtors have acted in bad faith. (Doc. 198 at ¶ 6.) Even construing these allegations as Rule 60(b)(3)-type allegations, however, the Court is unpersuaded that relief is warranted.

12

"A district court may vacate an order under Rule 60(b)(3) if the movant proves by clear and convincing evidence that the adverse party engaged in fraud, misrepresentation, or misconduct." *Brinklys v. Johnson*, 752 Fed. Appx. 828, 831 (11th Cir. 2018) (citations omitted). Notably, however, "[c]onclusory allegations of fraud are insufficient to meet the clear and convincing evidence standard required under Rule 60(b)(3)." *See Williams v. U.S. Bank National Association*, No. 1:18-cv-1796-TCB, 2019 WL 8587290, at *1 (N.D. Ga. Aug. 29, 2019) (citing *Goode v. Wild Wing Café*, 588 F. App'x 870, 874 (11th Cir. 2014)). Here, there is no clear and convincing evidence of fraud, just conclusory allegations. For example, the Movants conclude that the Court's finding that the Debtors' assets were not fraudulently transferred was made without evidence or "any determination as to the reasonably equivalent value of the Debtors' business." (Doc. 198 at ¶ 10.) This assertion is not only conclusory, but curious. The Movants allege there was no evidentiary support for the Court's finding of a fair and reasonable asset transfer; but they haven't presented any evidence to the contrary or any evidence suggesting that the transfer was, in fact, fraudulent.

However, the purchaser, SCP Coldworks, proffered evidence in support of the sale and its legitimacy at the February 12, 2020, sale hearing and that evidence was unchallenged. The Debtors argued in support of the same. Mr. Hodges was not cross-examined, and no evidence was put on by the Movants. Beyond the evidentiary proffer attesting to the fairness and reasonableness of the sale, the Court took judicial notice of the contents of its files and had the benefit of several hearings to garner information about the Debtors' business and its value. What the Court did not have, however, was any evidence to the contrary.

Nor have the Movants proffered clear and convincing evidence that the Debtors were "gaming the system;" the Movants conclude so, but they do not evince it. Finally, there is no clear

13

and convincing evidence of bad faith. At the February 12, 2020, sale hearing, SCP Coldworks proffered, in addition to financial information and expectations, that it had acted in good faith at all times. Again, the Movants did not cross-examine Mr. Hodges or otherwise evince anything differently. Consequently, when deciding whether to authorize the sale, the evidence before the Court—evidence that established SCP Coldworks as a good faith purchaser—was uncontroverted. Instead of clear and convincing evidence of fraudulent transfers, "gaming the system," and bad faith (in 60(b)(3) terms—fraud, misrepresentation, or misconduct) the Movants stand on mere allegations. Those allegations, however, are insufficient to garner Rule 60(b)(3) relief.

Because most of the Movants' allegations do not fit squarely within the Rule 60(b)(1)-(5) categories, perhaps the Motion for Relief is most fairly construed as seeking relief under the Rule 60(b)(6) catchall provision that allows relief for any other justified reason. In that regard, the Motion for Relief rests primarily on allegations that evidence and financial information to support the sale were lacking or non-existent. (Doc. 198 ¶¶ 1, 4, 5, 7, 13.) It also questions the propriety of the sale under the theory that the sale is effectively a plan of reorganization and that it is an "end-run" around the absolute priority rule. (Doc. 198 ¶¶ 2, 8,11.) In considering these allegations, the Court is mindful that "Rule 60(b)(6) is reserved for instances of genuine injustice." *Hertz Corp. v. Alamo Rent-A-Car, Inc.*, 16 F.3d 1126, 1128 (11th Cir. 1994). Indeed,

> Relief under Rule 60(b)(6) " 'is an extraordinary remedy which may be invoked only upon a showing of exceptional circumstances[,]' " and that "absent such relief, an extreme and unexpected hardship will result." *Crapp v. City of Miami Beach,* 242 F.3d 1017, 1020 (11th Cir.2001) (quoting *Griffin v. Swim–Tech Corp.,* 722 F.2d 677, 680 (11th Cir.1984)); *Galbert v. W. Caribbean Airways,* 715 F.3d 1290, 1294 (11th Cir.2013) (same). In other words, the movant " 'must demonstrate a justification so compelling that the district court was required to vacate its order.' " *Galbert,* 715 F.3d at 1294 (quoting *Cano,* 435 F.3d at 1342). However, even under exceptional circumstances, the decision to grant Rule 60(b)(6) relief is a matter for the court's sound discretion. *Id.* at 1294 (citing *Cano,* 435 F.3d at 1342 and *Seven Elves, Inc. v. Eskenazi,* 635 F.2d 396, 402 (5th Cir. Unit A 1981)).

*Rismed Oncology Systems, Inc. v. Baron*, 638 Fed. Appx. 800, 807 (11th Cir. 2015).

The Movants have asserted that the "Debtors have presented no evidence in support" of the sale motion, that "no evidence was presented as to the value of the Debtors' assets," that "Debtors produced no evidence of whether or not the sale was made to a good faith purchaser," and that "Debtors have failed to provide the creditors with any financial information." The Court views these assertions as inconsistent with the record in this case and insufficient to warrant the extraordinary relief requested by the Movants. (Doc. 198 ¶¶ 1, 4, 7, 13.)

As far as evidence supporting the sale is concerned, there was the proffered testimony of the President of Redmont Capital (manager of the secured lender that credit bid on behalf of the purchaser, SCP Coldworks) which included a proffer of projected cash flow, month over month growth, store reductions, projected in-store sales, projected vending sales, and projected wholesale operations for Steel City Pops. Movants elected not to cross-examine Mr. Hodges. Beyond the proffer of Mr. Hodges's testimony, which also included a proffer about marketing and good faith, the Court took judicial notice of exhibits and documents submitted in this case concerning asset value and pertinent financial information. This included, for example, the Debtors' schedules which, among other things, summarized its assets and liabilities under penalty of perjury. (Doc. 65.) Notably, these schedules are a matter of public record, so parties in interest have had access to them as well. Additionally, the Court considered the Debtors' budget (also available to parties in interest) submitted in support of First Day Motions. (Doc. 27.) To be clear, therefore, evidence in support of the sale, as to the value of the Debtors' assets, and to establish SCP Coldworks as a good faith purchaser was either proffered, in the record, or both.

Other allegations asserted in the Motion for Relief suggest impropriety in the sale itself: "Although the sale document is called an Asset Purchase Agreement, the sale is, in reality, a

transfer of the Debtors' business without a Plan by way of a Motion to Approve a Sale under 11 U.S.C. § 363, which gives the Debtors an opportunity to argue that, after closing, the sale is statutorily and equitably moot." (Doc. 198 ¶ 8.) The Motion for Relief further asserts the sale motion is in "the nature of a Plan of Reorganization and seeks to accomplish many of the results of a Plan of Reorganization;" the implication being that, by its nature, the sale effectively evaded the Chapter 11 plan confirmation process and its safeguards. (*Id.* at ¶ 2.) For several reasons, these allegations do not warrant the extraordinary remedy of Rule 60(b)(6) relief.

To begin, there is nothing inherently suspect about the Fund's credit bid through SCP Coldworks; indeed, "[g]enerally speaking, the holder of a lien securing an allowed claim has the right to credit bid its claim in connection with any sale of its collateral proposed under section 363 of the Bankruptcy Code." *In re 160 Royal Palm, LLC,* No. 18-19441-EPK, 2019 WL 989829, at *2 (Bankr. S.D. Fla. Feb. 26, 2019). Beyond the propriety of the credit bid, however, is the legitimacy of the § 363 sale, itself, under the circumstances of this case. "In addition to a reorganization plan, a section 363(b) sale is an appropriate means of disposing of the debtor's assets." *In re GSC, Inc.*, 453 B.R. 132, 155 (Bankr. S.D.N.Y. 2011) (citations omitted). Thus: "A debtor may sell substantially all of its assets as a going concern and later submit a plan of liquidation providing for the distribution of the proceeds of the sale. This strategy is employed, for example, when there is a need to preserve the going concern value." *Id.* Indeed, "[i]t is now generally accepted that section 363 allows such sales in chapter 11, provided, however, that the sale proponent demonstrates a good, sound business justification for conducting the sale prior to confirmation (other than appeasement of the loudest creditor), that there has been adequate and reasonable notice of the sale, that the sale has been proposed in good faith, and that the purchase

16

price is fair and reasonable." *In re Condere Corp.*, 228 B.R. 615, 626 (Bankr. S.D. Miss. 1998) (citing *Collier,* ¶ 363.02[4] at 363–19 to 20)).

Here, the evidence before the Court established that the Debtors were upwards of $ 6.5 million in debt to their secured lenders. Debtors' counsel represented that Steel City Pops was "bleeding cash" trying to sell popsicles in January. Counsel also represented that the SCP Coldworks bid was the only bid; such that it may not have been a great deal, but it was the *only* deal. These representations were not made in a vacuum, and the evidence received by the Court throughout the pendency of this matter substantiated Steel City Pops' dire straits. Thus, the decision to transfer assets pursuant to the revised Asset Purchase Agreement was "supported by good business reasons and sound justification based up the Debtors' experience and the circumstances presented in this case." (Doc. 178 at ¶ 18.); *see In re GSC, Inc.*, 453 B.R. at 156 (Bankr. S.D.N.Y. 2011) ("So long as a good business reason supporting the sale exists, a judge has considerable discretion in approving that sale."). Accordingly, the Movants have failed to show that authorizing a § 363 sale under such circumstances was improper, much less so unjust as to warrant granting the extraordinary relief requested under Rule 60(b)(6).

The same holds true as it relates to the Movants allegations of an "end run" around the absolute priority rule. (*See* doc. 198 at ¶ 11.) There is no evidence that the absolute priority rule has been violated, that Mr. Watkins "negotiated a contract for his continued employment," or that he retained his equity interest, as alleged. The Movants did not make an appearance on the record at the January 22, 2020, hearing that Mr. Watkins attended, but they did appear at the February 12, 2020, hearing where Mr. Watkins's counsel represented on the record that Mr. Watkins had no interest in SCP Coldworks and no guarantee of continued employment. Moreover, Mr. Watkins now has his own chapter 7 bankruptcy case, where the Movants and the trustee will have an

opportunity to investigate Mr. Watkins's financial affairs and examine his assets. Even if the Movants' allegations were not disputed, which they are, they do not portend a "instance of genuine injustice" justifying Rule 60(b)(6) relief. *See Hertz.*, 16 F.3d at 1128 (11th Cir. 1994). And for that reason, the extraordinary remedy of Rule 60(b)(6) is not justified by either the facts or the circumstances of this case.

## CONCLUSION

Accepting their allegations as true, the Movants loaned money to Mr. Watkins for investment in Steel City Pops and they want to be repaid. And their gripe is understandable under that scenario. But it is not enough to undo this sale or alter or amend the Sale Order. The Movants are not the only creditors, or even the largest creditors, in this chapter 11 case. They are unsecured creditors who loaned money to Mr. Watkins based on several promissory notes signed between 2015 and 2017 without taking a security interest in any collateral. This Court approved the sale with an eye on protecting the interests of all parties in interest and ensuring that the sale was not for an illegitimate purpose. 3 *Collier on Bankruptcy* ¶ 363.02[4] (16th ed.). There is no genuine injustice or manifest error to warrant the extraordinary relief the Movants seek. Nor is there evidence that the sale was an improper plan, devised to deprive the Movants of a remedy and to foreclose future relief based on equitable and statutory mootness. Furthermore, the Movants have not articulated a specific chapter 11 right or protection that was denied by the sale. *In re On-Site Sourcing, Inc.*, 412 B.R. 817, 824 (Bankr. E.D. Va. 2009).

The reality here, and what the evidence substantiates, is that this business was up to its eyeballs in debt and going nowhere fast by trying to sell popsicles during the colder months. Further, the credit bid for the sale of the business was not the greatest deal ever, but it was the only deal. Dire straits notwithstanding, the Court authorized the sale only upon evidence of good faith,

18

"good business reasons and sound justification," proper notice with an opportunity to object and present evidence, and a fair and reasonable purchase price.

"The purpose of section 363(m) is to maximize the sale price of estate assets by providing assurances to the purchaser of the finality of the sale by eliminating the prospect of litigation concerning claims to the property." *Licensing by Paolo, Inc. v. Sinatra (In re Gucci),* 126 F.3d 380, 385 (2d Cir.1997). "Thus, confirmed sales may be vacated only when compelling equities outweigh the interest in finality." *In re W.M. Hall's Farm, Inc.*, No. 04–12556 JTL, 2010 WL 2836826, at *3 (Bankr. M.D. Ga. July 16, 2010).

In support of their arguments, the Movants have "not set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision," nor is the Court persuaded that extraordinary relief is justified here. *Rhodes v. Davis,* No. 08-0523-CG-C, 2010 WL 4260048, at *3 (S.D. Ala. Oct. 25, 2010). Because the equities do not compel overriding the finality of the Sale Order, the Motion for Relief (doc. 198) is hereby **DENIED.**

Dated: May 20, 2020

/s/ D. Sims Crawford
D. SIMS CRAWFORD
United States Bankruptcy Judge